1

**CABALLERO & GETTLEMAN LAW OFFICE, INC**.
Elizabeth M. Caballero, SBN 240249
2   Jonathan Che Gettleman, SBN 243560
223 River Street, Suite D
3   Santa Cruz, California 95060
TELEPHONE: 831-427-2658
4   FACSIMILE:  831-515-5228
Cglaw2015@gmail.com

5

Attorneys for Plaintiffs,
6   Felicia Smith and
Michael Warren-Smith

7

## UNITED STATES DISTRICT COURT

8

### FOR THE NORTHERN DISTRICT OF CALIFORNIA- SAN JOSE DIVISION

9

| | |
|---|---|
| TAMARIO SMITH, DECEASED, through his Co-Successors-in-Interest FELICIA SMITH, individually and MICHAEL WARREN-SMITH, individually, | Case No. |
| | **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS WITH PENDANT STATE LAW CLAIMS.** |
| Plaintiffs, | |
| vs. | **1)  Violation of Due Process (42 U.S.C. § 1983)** |
| COUNTY OF SANTA CRUZ, a municipal corporation;  JAMES   HART,   in   his individual  capacity  as  Sheriff  for  the COUNTY OF SANTA CRUZ; PAUL RAMOS, in his individual capacity as Chief Deputy of Corrections, MIMI HALL, in her individual capacity as Director of Health Services Agency for the COUNTY OF SANTA CRUZ; ERIK REIRA, in his individual   capacity   as   Director   of Behavioral Health for the COUNTY OF SANTA CRUZ, Wellpath, LLC, DOES 1-50, | **2)   Deliberate Indifference to Serious Medical Need (42 U.S.C. §1983)** |
| | **3) Wrongful Death (42 U.S.C. §1983)** |
| | **4)  Right of Association (42 U.S.C. §1983)** |
| | **5)  Failure to Properly Train (42 U.S.C. §1983)** |
| | **6)   Failure to Properly Supervise and Discipline (42 U.S.C. §1983)** |
| | **7)  Failure to Properly Investigate (42 U.S.C. §1983)** |
| | **8)  *Monell* (42 U.S.C. §1983)** |
| Defendants. | **9)  Wrongful Death (CCP §377.60)** |
| | **10)  Negligence** |
| | **11)  42 U.S.C. §12132** |
| | **12)  29 U.S.C. §794(a)** |
| | **JURY TRIAL DEMANDED** |

COMES NOW, Plaintiffs TAMARIO SMITH, Decedent, by and through his co-successors

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

in interest, FELICIA SMITH and MICHAEL WARREN-SMITH, by and through their attorneys, CABALLERO & GETTLEMAN LAW OFFICE, INC, for their Complaint against Defendants, state as follows:

## INTRODUCTION

At the time of his death, Tamario Smith was 21 years old.  He had been incarcerated at the Santa Cruz County Jail from February 3, 2020, until his untimely death on Mother's Day, May 10, 2020.  Tamario's on again/off again boyfriend alleged that on November 30, 2019, they had gotten into an argument that ended with Tamario punching him on the bicep, resulting in a small bruise. Tamario had two prior misdemeanor domestic violence convictions with the same partner that had resulted in protective orders.  In response to this allegation, on December 10, 2019, the Santa Cruz District Attorney's office charged Tamario with violating Penal Code §273.5, as a felony, two counts of violating Penal Code §166(c)(1), violation of a protective order and one count of violating Penal Code §143(e)(1), domestic battery.  (Exhibit A, p. 1-3, Criminal Case 19CR07460.)

Tamario was initially granted supervised release; however, on February 3, 2020, after failing to appear for court on two occasions, the Santa Cruz Superior Court remanded Tamario to the Santa Cruz County Jail based on pre-trial services' recommendation.  (Exhibit A, p.4)  On February 14, 2020, his public defender requested the Superior Court to appoint a psychologist, Dr. Katz, to evaluate Tamario pursuant to California Evidence Code §730 in order to determine if Tamario suffered from a psychiatric illness and to assist the court in recommending a course of treatment. (Exhibit A, p. 5-6)  On February 27, 2020, Dr. Katz issued his EC §730 report detailing his in custody evaluation of Tamario and his psychiatric history as a diagnosed Schizophrenic in both psychiatric facilities as well as at the jail.  Dr. Katz also concluded that Tamario suffered from Schizophrenia with a "severe" level of psychosis.  Dr. Katz noted in his report that Tamario acknowledged hearing voices that were, "good-bad, bad-good, counseling."  Tamario told Dr. Katz

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

that the voices were telling him what to do and that he could hear the voices, "every second, every hour, every minute.' Dr. Katz observed that Tamario exhibited many symptoms of Schizophrenia such as hallucinations, disorganized thinking and incoherent speech.    Tamario's defense attorney declared a doubt about his competency to stand trial and the Superior Court suspended criminal proceedings pursuant to California Penal Code §1368. (Exhibit A, p.7)  The Superior Court then appointed Dr. Katz to evaluate Tamario and determine his competency to stand trial pursuant to PC §1368. (Id.)  The court ordered return on Dr. Katz's report for March 26, 2020.  (Exhibit A, p. 8-9.)

Dr. Katz's report pursuant to PC §1368 noted that in addition to determining competency, the purpose of the report was to determine whether Tamario had the capacity to make decisions regarding administration of antipsychotic medication.   As detailed in his report, Dr. Katz again observed that Tamario acknowledged suffering from auditory hallucinations and observed Tamario respond to internal stimuli.  During this interview, Tamario "passed" on many questions and could not articulate any understanding of the proceedings against him.  Tamario had no insight into his psychosis and could not explain whether the medication was working.  Dr. Katz observed that Tamario had poor insight, judgement and "grossly impaired" reasoning.

Dr. Katz's report made two conclusions: 1) That Tamario was mentally incompetent to stand trial; and 2) Tamario lacked capacity to make well-reasoned medical decisions thus, requiring the administration of antipsychotic medication as there were no other means available to address his psychosis.

On March 26, 2020, the Superior Court found Tamario mentally incompetent to stand trial pursuant to PC §1367.01(a)(1) and issued an order for Tamario's evaluation.  (Exhibit A, p. 10-12.)  Pursuant to PC §1372(a), the court ordered that on April 9, 2020, CONREP's[1] contractor, Harper

---

[1] CONREP is the California state agency tasked with determining if Tamario was to be placed in a mental health hospital or released after he had been declared incompetent to stand trial.  Plaintiffs intend to amend CONREP in as defendants after the ongoing California Torts Claims Process has been exhausted.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

3.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

Medical Group, would report and recommend whether Tamario should be required to undergo outpatient treatment or be committed to a state hospital or some other mental health facility. (Id.) CONREP/Harper Medical Group failed to timely submit the April 9, 2020 report. (Exhibit A, p. 13.) Tamario was not present in court, either personally or through remote video for this proceeding and was held in the "tombs," a tunnel system between the Courthouse and the jail. (Id.) On April 9, 2020, the Court simply noted a new due date CONREP/Harper Medical Group's report for April 22, 2020. (Id.) On April 23, 2020, Tamario was not present in court either in person or through remote video feed. (Exhibit A, p. 14.)   The court noted again that CONREP/Harper Medical Groups failed to file its report and directed the clerk of the court to contact CONREP. (Exhibit A, p. 14.) The court set a future court date for receipt of CONREP/Harper Medical Group's report and future court date for May 7, 2020. (Id.) CONREP/Harper Medical Group again failed to appear and the report again was not forthcoming, because they, now for the third time, failed to ever even evaluate Tamario. (Exhibit A, p. 15.)

On May 10, 2020, Tamario, was found lying on cell room floor unresponsive. (Exhibit B, Autopsy Report.) Dr. Fiore, Forensic Pathologist for the Santa Cruz Sheriff-Coroner, responded to the cell and found Tamario dead after jail personnel attempted to revive him unsuccessfully. Dr. Fiore observed that Tamario was lying supine on the floor in a large pool of watery, odorless fluid with vomit around his face.   Tamario Smith's shirt and both the front and back of his pants were covered in a clear liquid.  The cell toilet contained watery yellow-green fluid.  An empty orange cup was found in the sink.  A bottle of white soap solution and a white container with a lid containing a white soap solution were found on Tamario's cell desk.

Dr. Fiore conducted an autopsy and had Tamario's urine tested and determined that it was hyper-diluted and that his sodium level was critically low.  A SARS-CoV-2 antigen test was also taken, with negative results.   Dr. Fiore ruled that Tamario died of sudden cardiac arrest caused by an

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

electrolyte imbalance due to excessive consumption of water.  Dr. Fiore reviewed video from Tamario's unit on the day that he died.  Dr. Fiore noted that Tamario appeared to be responding to "internal stimuli."  Dr. Fiore observed that Tamario filled up a bottle with pink cleaning fluid from the jail unit's mop bucket.  She observed Tamario fill up a white drinking cup four times and drinking from a white cup that he brought out from his cell.  Dr. Fiore did not know how much he had consumed prior to that.  Dr. Fiore observed that there was watery yellow-green fluid in the toilet believed to be emesis.  On his desk was a bottle and a container of "white soap solution."  On the floor near the door were Ziploc baggies filled with a similar white soap solution and a bottle of pink fluid. Dr. Fiore spoke with other inmates in Tamario's unit.

Dr. Fiore also reviewed statements by other inmates housed in the same unit as Tamario.  An unidentified witness stated that Tamario had made statements several days before his death that he was considering drinking cleaning fluid to "clean out his stomach."  This unidentified inmate advised Tamario to not drink cleaning fluid.  Other unidentified witnesses observed Tamario drinking a lot of coffee and was shaky on the day of his death, causing him to drop his cup on the patio.

Dr. Fiore noted that Tamario had a well-documented psychiatric and medical history beginning in October 2018.  Dr. Fiore noted that Tamario was a diagnosed schizophrenic that the Santa Cruz Superior Court had determined on March 26, 2020, to be mentally incompetent to stand trial due to his Schizophrenia and noted that his psychosis was "severe."  Tamario had persistent auditory Hallucinations and was observed responding to internal stimuli.  While at the Santa Cruz County Main Jail, Tamario was prescribed olanzapine, risperidone, and trazodone.  Dr. Fiore noted in her autopsy report that Tamario also suffered from Rhabdomyolysis with acute kidney injury as of October 2018.  Rhabdomyolysis is considered a serious syndrome where the kidneys are unable to remove waste and concentrated urine that can result in kidney failure and death.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

Psychogenic polydipsia is a condition of excessive water intake commonly observed in patients with psychiatric disorders, especially those who suffer from schizophrenia.  Psychogenic polydipsia can result in hyponatremia, a lower level of sodium in the bloodstream, and death.

Dr. Fiori reviewed some of Tamario's medical documents and noted that he had two medical calls in close proximity to his death, one on April 21, 2020, for a headache and the other for a transient neurological deficit in his right upper extremity on April 28, 2020.  At the April 21, 2020, medical call, Defendants gave Tamario ibuprofen, Gatorade and advised him to drink at least 5 cups of water a day.  On the April 28, 2020, during the morning medication rounds, Defendants WELLPATH/CFMG LVN observed that Tamario had motor deficit of his upper right extremity.  These are all common symptoms of over-hydration.  No action was taken other than to encourage Tamario to drink even more fluids.

An autopsy revealed that Tamario had a dilated heart with a pericardial effusion, pulmonary edema and agonal aspiration of gastric emesis.  According to the autopsy report and death certificate, Dr. Fiore determined that Tamario died of sudden cardiac arrest due to electrolyte imbalance associated with excessive consumption of water and coffee.  However, of note, the Sheriff-Coroner never tested the contents of Tamario's stomach nor did they test the fluid they found in the toilet.  The Sheriff-Coroner failed to note the significant of Tamario's particularly heavy fluid-saturated lungs, namely, that Tamario likely asphyxiated in the prone position from his own vomit.

On May 14, 2020, the court dismissed the case against Tamario due to him being deceased.  (Exhibit A, p. 15.)

**JURISDICTION**

1.      This is a civil rights wrongful death/survival action arising under 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California.  This action arises under Title 42 of the United States Code,

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

6.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

sections 1983 and 1988.  Jurisdiction is conferred upon this Court by 28 U.S.C §§ 1331 and 1343 and 42 U.S.C. Section 12188(a).  Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367, to hear and decide claims arising under state law.  The amount in controversy herein, excluding interest and costs, exceeds the minimum jurisdictional limit of this Court.

2.     A substantial part of the events and/or omissions complained of herein occurred in the County of Santa Cruz, California, and this action is properly assigned to San Jose Division of the United States District Court for the Northern District of California pursuant to 28 U.S.C. section 1391(b).  This Court has jurisdiction to grant the declaratory relief requested pursuant to 28 U.S.C. §2201 and Federal Rules of Civil Procedure, Rule 57.

3.     A proper and timely tort claim was presented to the COUNTY OF SANTA CRUZ on behalf of Plaintiffs and Decedent, pursuant to Government Code §910 et seq., on May 27, 2020, and amended on September 21, 2020, which was denied by letter and Notice of Rejection on July 30, 2020.  This action was thereafter filed within all applicable statutes of limitation.

4.  Plaintiffs provided notice of intent to sue under California's Code of Civil procedure section 364 subdivision (a), part of MICRA to the following medical professionals on the following corresponding dates: Wellpath, LLC/California Forensic Medical Group, on June 30, 2020.

5.  Plaintiffs also presented a tort claim to CONREP on behalf of Plaintiffs and Decedent, pursuant to Government Code §910 et seq., on December 28, 2020.  Plaintiff's will amend this complaint to name CONREP as a defendant once that same Torts Claims Process is complete.  For the purposes of this initial complaint, CONREP will be designated Doe 1.

6.  Plaintiffs provided notice of intent to sue under California's Code of Civil procedure section 364 subdivision (a), part of MICRA to the following medical professionals on the following corresponding dates: Harper Medical Group, on December 22, 2020.  Plaintiff's will amend this complaint to name Harper Medical Group as a defendant once the notice period under MICRA has expired.  For the purposes of this initial complaint, Harper Medical Group will be designated Doe 2.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

7.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

**PARTIES**

7.     Plaintiff FELICIA SMITH is and was at all times herein mentioned the mother of Decedent TAMARIO SMITH and a resident of the State of California.  Plaintiff FELICIA SMITH, brings these claims individually for the wrongful death and violation of her personal rights, and as co-successor in interest to Decedent TAMARIO SMITH pursuant to California Code of Civil Procedure §§377.10 et seq.  She brings these claims under California state and federal law.

8.  Plaintiff MICHAEL WARREN-SMITH is and was at all times herein mentioned the father of Decedent TAMARIO SMITH and at all times relevant to this lawsuit was a resident of the State of California.  Plaintiff, MICHAEL WARREN-SMITH brings these claims individually for the wrongful death and violation of his personal rights, and as co-successor-in-interest to Decedent TAMARIO SMITH pursuant to California Code of Civil Procedure §§377.10 et seq.  He brings these claims under California state and federal law.

9.     Plaintiffs FELICIA SMITH and MICHAEL WARREN-SMITH bring these claims pursuant to California Code of Civil Procedure §§377.20 et seq., which provides for survival actions.  All Plaintiffs also bring claims pursuant to California Code of Civil Procedure §§377.60, et seq., for wrongful death.  All Plaintiffs also bring claims for violations of their personal federal constitutional rights to familial association.  All Plaintiffs bring their claims individually, and Plaintiffs FELICIA SMITH and MICHAEL WARREN-SMITH also bring claims on behalf of Decedent TAMARIO SMITH, on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law, and California law.  Plaintiffs also bring these claims as Private Attorneys General, to vindicate not only their rights, but others' civil rights of great importance.

10.     Defendant COUNTY OF SANTA CRUZ ("COUNTY") is a municipal corporation, duly organized and existing under the laws of the State of California and is the employer of the individual COUNTY defendants, as well as certain DOE DEFENDANTS. Defendant COUNTY operates and is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies, including the Santa Cruz County Sheriff's Department ("Sheriff's Office") and the Santa Cruz County Jail ("Jail"), and their agents and employees.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

8.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

11.     Defendant, Sheriff JAMES HART ("HART"), and at all times mentioned herein was employed by Defendant COUNTY as Sheriff for the COUNTY and was acting within the course and scope of that employment at such times.   He is being sued in his individual capacity as Sheriff for the COUNTY OF SANTA CRUZ.  At all material times, Defendant HART was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all Santa Cruz County Sheriff's Department custodial employees and/or agents, medical staff and Doe Defendants.

12.   At all relevant times to this complaint, Defendant HART was the final policy making official for the COUNTY OF SANTA CRUZ Sheriff's Office and Santa Cruz County Jail, and he was responsible for the promulgation of the policies and procedures and alliance of the practices/customs pursuant to which the acts of the Sheriff's Department alleged herein were committed, as well as the supervision and control of officers who are or were employed by the Sheriff's, who are under his command and/or who report to him, including the Defendants to be named.

13.   Defendant, Chief Deputy Sheriff of Corrections PAUL RAMOS ("RAMOS"), and at all times mentioned herein, was employed by Defendant COUNTY as Chief Deputy of Corrections, including the Santa Cruz County Main Jail ("Jail"), and was at all times acting within the course and scope of that employment at such times.  He is being sued in his individual capacity as Chief Deputy Sheriff of Corrections for the COUNTY.  At all material times, Defendant RAMOS was a policy making official for the COUNTY OF SANTA CRUZ Sheriff's Department and the Main Jail, and on information and belief, Defendant Sheriff HART had delegated to Defendant RAMOS the power and authority to oversee the day-to-day supervisions, training, policies and procedures in place at the Jail.

14.   Defendant, MIMI HALL ("HALL"), and at all times mentioned herein, was employed by Defendant COUNTY as Director of Santa Cruz County Health Services Agency, including County Mental/Behavioral Health, an agency that provides mental health treatment to Santa Cruz County Jail inmates, and was acting within the course and scope of that employment at such times.  She is being sued in her individual capacity as Director of Santa Cruz County Health Services Agency for the COUNTY.  At all material times, Defendant HALL was a policy making official for the COUNTY OF SANTA CRUZ Health Services Agency, including County Mental Health at the Santa Cruz

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

County Jail.

15. Defendant, ERIK REIRA ("REIRA"), and at all times mentioned herein, was employed by Defendant COUNTY as Director of Santa Cruz County Behavioral/Mental Health Services Agency, a County agency under the Santa Cruz County Health Services Agency, that provides mental health treatment to inmates at the Santa Cruz County Jail, and was acting within the course and scope of that employment at such times. He is being sued in his individual capacity as Director of Santa Cruz County Mental/Behavioral Health at the Santa Cruz County Jail. At all material times, Defendant REIRA was a policy making official for the COUNTY OF SANTA CRUZ Mental/Behavioral Health Department which provides services to inmates at the Main Jail, and on information and belief, Defendant HALL had delegated to Defendant REIRA the power and authority to oversee the day-to-day supervisions, training, policies and procedures in place at County Mental/Behavioral Health which services inmates at the Santa Cruz County Jail.

16. The COUNTY is a public entity and is sued under Title 42 U.S.C. §§ 1983 and 1988 for violations of the Fourth and Fourteenth Amendments of the United States Constitution, California state law, the California Tort Claims Act, and the Government Code for the acts and omissions of COUNTY OF SANTA CRUZ (including Sheriff's Office and the jail), and DOES 3-30, (Collectively referred to herein as "DEFENDANTS") and each of them, who at the time they caused Plaintiffs' injuries and damages were duly appointed, qualified and acting officers, employees, and/or agents of COUNTY acting within the course and scope of their employment and/or agency. In engaging in the conduct described herein, DEFENDANTS, inclusive, exceeded the authority vested in them as public employees under the United States and California Constitutions and as Sheriff Deputies employed by Defendant COUNTY.

17. Plaintiffs are informed and believe and thereon allege that each DOE Defendant 3-25 so named, at all material times, was employed by Defendant COUNTY (including Sheriff's Office, the Santa Cruz County Jail and medical personnel and agents of Defendant County of Santa Cruz, including but not limited the Health Services Agency for the County of Santa Cruz) at the time of the conduct alleged herein. Plaintiff alleges that the conduct of each defendant deprived TAMARIO

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

SMITH of his constitutional rights to life, his constitutional right to adequate safety, as well as custodial care and supervision, and caused TAMARIO SMITH to suffer grievous harm and physical injuries prior to his death, and ultimately caused his death while he was in the custody of Defendants.

18.     DOE Defendants were responsible for assigning TAMARIO SMITH with appropriate observation.  In doing the acts or omissions hereinafter described, certain DOE Defendants 3-30 acted within the course and scope of their employment with Defendant COUNTY of SANTA CRUZ and acted under color of state law.  The DOE Defendants were either Correctional Officers, jail staff, Sheriff's Deputies, Sergeants, Captains, Lieutenants, or other Peace Officers, and/or civilian employees and/or agents who were responsible for the care, housing, observation, medical needs and safety of inmates, including TAMARIO SMITH.

19.     Plaintiffs are ignorant of the complete true names and capacities of Defendant DOES 3 through 30, inclusive, and, therefore, sue these defendants by such fictitious names.  Plaintiffs will amend this Complaint to show said Defendants' true names and capacities when the same have been ascertained.  Plaintiffs are informed, believe, and thereon allege that all Defendants sued herein as DOES 3-30 were are in some manner responsible for the acts, omissions, and injuries alleged herein.

20.     The Santa Cruz Main Jail is owned and operated by County of Santa Cruz and staffed by County of Santa Cruz Sheriff's deputies.

21.     Plaintiffs allege, on information and belief, that each of the Defendants sued herein was wrongfully, deliberately indifferent, unreasonably, negligently, and/or otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiff and/or Decedent.  Further, one or more DOE Defendants 21-30 was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including both the individually named and DOE Defendants.

22.     Plaintiffs allege, on information and belief, that each of the Defendants was at all material times an agent, servant, employee, partner, joint venture, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of that relationship.  Each of the Defendants caused and is responsible for the unlawful

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

conduct and resulting harm by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so, by authorizing, acquiescing, condoning, acting, omitting or failing to take action to prevent the unlawful conduct, by promulgating or failing to promulgate policies and procedures pursuant to which the unlawful conduct occurred, by failing and refusing to initiate and maintain proper and adequate policies, procedures and protocols, and by ratifying and condoning the unlawful conduct performed by agents and officers, deputies, medical providers and employees under their direction and control.  Plaintiff further allege, on information and belief, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may hereinafter be otherwise, specifically alleged.  At all material times, each Defendant was an integral participant, jointly and fundamentally engaged in constitutionally violative, unlawful, and/or tortious activity, resulting in the deprivation of Plaintiffs' and Decedent's' constitutional rights and other actionable harm.

23.    The acts and omissions of all individual Defendants, were at all times pursuant to the actual customs, policies, practices, and/or procedures of the COUNTY OF SANTA CRUZ.

24.    At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

25.     At all times relevant to this complaint, Defendant Wellpath, LLC ("Wellpath") is Delaware corporation with its principle place of business located in Nashville, TN as well as San Diego, CA.  Defendant Wellpath is a vendor of the County and provides, under written contract, medical services to inmates incarcerated in Santa Cruz County detention facilities.  Defendant Wellpath, in a memorandum of understanding, agreed to work together with Defendant County's Health Services Agency, Mental Health, and Defendant County Sheriff's Department to cooperatively determine and provide appropriate levels of care and treatment for all mentally disordered persons who are incarcerated at the County Jail; to include sharing, cross-referencing, and annual review of policy and procedures.

26.  At all relevant time to this complaint, California Forensic Medical Group ("CFMG") is a

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

12.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

California Corporation with its principle place of business in San Diego, CA.  Defendant CFMG was purchased by Defendant Wellpath in 2018.  Defendant CFMG is a vendor of the County and provides, under written contract, medical services to inmates incarcerated in Santa Cruz County detention facilities.  Defendant CFMG, in a memorandum of understanding, agreed to work together with Defendant County's Health Services Agency, Mental Health, and Defendant County Sheriff's Department to cooperatively determine and provide appropriate levels of care and treatment for all mentally disordered persons who are incarcerated at the County Jail; to include sharing, cross-referencing, and annual review of policy and procedures.

## GENERAL ALLEGATIONS

27.  Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

28.  In February 2020, Tamario Smith was a pre-trial detainee at the Santa Cruz County Main Jail.

29.  While awaiting trial for violations of Penal Code section 273.5 and Penal Code section 166, his criminal defense attorney expressed a doubt that Tamario Smith had the mental capacity to participate in his own defense.

30.  On February 14, 2020, the Superior Court of Santa Cruz appointed Dr. Katz to conduct a psychological evaluation of Tamario Smith pursuant to Evidence Code section 730.  (Exhibit A, p.5-6.)  Dr. Katz detailed in his report that Mr. Smith had a history of Schizophrenia and that he was presently suffering a severe psychosis including auditory hallucinations that commanded him.

31.  In light of Dr. Katz's evaluation, on March 10, 2020, Tamario Smith's defense attorney declared a doubt and the Superior Court suspended criminal proceedings pursuant to California Penal Code §1368.  (Exhibit A, p 7-10.)  The Superior Court again appointed Dr. Katz to evaluate Tamario Smith and determine his competency pursuant to PC §1368.  (Id.)  The court ordered return on Dr. Katz's report for March 26, 2020.  (Id.)

32.  On March 16, 2020, Dr. Katz' evaluation was filed.  It again documented that Tamario Smith suffered from a severe schizophrenic psychosis.  Dr. Katz concluded that Mr. Smith was incompetent to stand trial and lacked capacity to make well-reasoned decisions regarding his mental

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

health and because he failed to take his medication, he should be administered anti-psychotic medication

33.    On March 26, 2020, the Superior Court found Tamario Smith mentally incompetent to stand trial pursuant to PC §1367.01(a)(1) and issued an order for Tamario Smith's evaluation. Pursuant to PC §1372(a), the court ordered that on April 9, 2020, DOE 1, CONREP's, contractor, DOE 2, Harper Medical Group, would report and recommend whether Tamario should be required to undergo outpatient treatment or be committed to a state hospital or some other mental health facility. (Exhibit A, p.10-12.)

34.    The Superior Court continued the matter on April 9, 2020, April 23, 2020, and May 7, 2020, for receipt of CONREP's report.  (Exhibit A, p.13-15.)   CONREP never evaluated Mr. Smith in accordance with the Superior Court order and failed to provide critical information whether Tamario Smith should be released from custody or committed to a state hospital for restoration of competency. (Id.)

35.    Upon information and belief, Defendants Wellpath, CFMG and Santa Cruz Behavior did not provide sufficient information regarding the psychogenic nature of Tamario Smith's polydipsia or the potentially fatal consequences of failing to properly monitor Tamario Smith's water intake.

36.    Upon information and belief, Defendants Wellpath, CFMG and Santa Cruz County Defendants did not adequately medicate or provide sufficient psychotropic medication to Tamario Smith.

37.    Upon information and belief, Defendants Wellpath, CFMG and Santa Cruz County Defendants had information that Tamario Smith suffered from a serious kidney disorder, Rhabdomyolysis and was a diagnosed schizophrenic.

38.    On information and belief, on April 21, 2020, medical personnel from Defendants Wellpath, CFMG and Santa Cruz County treated Tamario Smith for dehydration when in fact he was hydrated and recommended that he consume more water, despite his diagnosis of Rhabdomyolysis and Schizophrenia.

39.    On information and belief, on April 28, 2020, Defendants WELLPATH/CFMG observed

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

that Tamario Smith had transient weakness in his right arm, a symptom of hyponatremia and/or Rhabdomyolysis. Despite this, Defendants Wellpath, CFMG and Santa Cruz County Defendants did nothing to treat Tamario's symptoms and underlying condition.

40.  Per the California Department of Justice and the California Board of State and Community Corrections, the Santa Cruz County Jail's suffers a 6.1% death rate per 100,000 bookings. In addition, the Grand Jury found that between the years 2012-2016, the Santa Cruz County Jail suffered a death rate of twice the number of expected deaths. (Exhibit C, Another Death in Jail, Grand Jury Report.)

41.  Santa Cruz County officials, including Defendant Sheriff HART, were aware of numerous systemic problems resulting in preventable deaths in the jails, but took no action to prevent further Constitutional violations. (Id.)

42.  At the time of Tamario Smith's death, there had been a long-standing custom and practice of improper and inadequate investigations, cover-up of misconduct; and failure to discipline and train deputies and medical staff. The Santa Cruz County Grand Jury convenes annually to conduct oversight of the County Jail and issues findings and recommendations. Year after year, the Grand Jury reports the same issues plague the jail such as constant overcrowding, staff shortages, mandatory overtime, low correction officer morale, failure to properly supervise inmates suffering from medical and mental health issues, a need to increase reporting and documentation by the Crisis Intervention Team ("CIT") in order to more quickly identify inmates in mental distress (CIT provides mental health services to the inmates under the Santa Cruz County Health Services Agency). And yet, despite the Grand Jury's meticulous and regular documentation and findings, their recommendations are largely ignored by Defendants. (Exhibits C-L, Grand Jury Reports.)

43.  Between August 2012 and December 2015 there were seven deaths in the Santa Cruz Main Jail. (Exhibit D, Five Deaths in Custody, Grand Jury Reports.) In August 2012, inmate Chrissy Sanders was arrested for petty theft and a probation violation. Sanders, who jail staff knew was detoxing off of opioids, complained of chest pain and was sent to Dominican Hospital for an x-ray and was medically cleared. After Sanders returned to the jail, Dominican Hospital revised its assessment of Sanders' lung x-ray and noted in its computer system that Sanders warranted "close

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

15.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

follow-up." The Santa Cruz County Jail had access to Dominican Hospital's electronic records program. Sanders continued to complain of chest pain. Five days later, Sanders experienced a seizure, had trouble breathing and requested to go back to the hospital. Santa Cruz County Jail staff refused her request after consulting with a jail doctor. After seven days of complaining of chest pain, requesting medication and being refused medication by jail staff, Sanders was found by her cellmate not breathing. Sanders' died from both of her lungs collapsing due to untreated pulmonary abscesses. The Santa Cruz County Grand Jury investigated her death and determined that jail corrections officers ignored Sanders' clear health warnings and failed to utilize their shared medical records system to see the updated information from Dominican Hospital noting "close follow-up." The Grand Jury also found that County Defendants' failure to properly staff Ms. Sanders' unit lead to Defendants' inability to adequately observe her clearly deteriorating condition. The Grand Jury also found that County Defendants failed to coordinate with Dominican Hospital which resulted in County Defendants incorrectly diagnosing and treating Ms. Sanders. The Grand Jury determined that medical personnel at the jail never looked at Ms. Sanders' Dominican Hospital records despite its ability to do so and especially where those records were updated to indicate a higher level of care for Ms. Sanders. In its report, the Grand Jury found that the Santa Cruz County Jail "did not follow accepted standards of care in treating an inmate with complications arising from intravenous opiate abuse." (Id.)

44. In November 2012, Santa Cruz County Jail inmate Brant Monnett died of an unintentional overdose. (Id.) After being booked for possession of narcotics and resisting arrest, Mr. Monnett told jail staff that he would be detoxing from methadone and opioids. For the next twelve hours, jail staff noted that Mr. Monnett's speech was slurred, confused, his eyes were half-closed and he had difficulty walking. After less than 24 hours in custody, Mr. Monnett was found dead. Ultimately, the Grand Jury concluded that Jail staff failed to place Mr. Monnett in a sobering cell or other well supervised medical unit despite knowing that Mr. Monnett would be detoxing from opioids. The Grand Jury concluded that CFMG had inadequate oversight and treatment of inmates in the medical unit. (Id.)

45. In January 2013, Bradley Drehere was arrested for criminal threats stemming from an incident where he was trying to obtain prescription medication from a medical clinic. (Id.) A jail

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

nurse evaluated Mr. Drehere and denied him admission.  Mr. Drehere was cleared by the hospital to return to the Main Jail where he was kept in administrative custody due to statements he made regarding his inability to get along with others.  He complained to a nurse handing out medications that he was missing several of his medications and could not take one that she had given him as in would interfere with his medication he had to take later in the morning.  Less than 48 hours after being returned to custody, a nurse discovered Mr. Drehere hanging from a noose fabricated out of a bed sheet.  The Sheriff-Coroner's office determined that the cause of death was intentional asphyxiation due to hanging.  A toxicology report found the presence of multiple anti-depressants and a valium derivative.  Although Mr. Drehere had been given a crises intervention referral, no clinician was available at the time he was booked.  The Grand Jury found that County Defendants failed to take adequate measures to ensure Mr. Drehere's safety and place him in an observation cell despite his admitted mental health issues, the fact that he was off his normal medication and had threatened violence on others.  (Id.)

46.  On July 13, 2013, Sheriff personnel discovered the body of Amanda Sloan, a pretrial detainee at the Santa Cruz County Main Jail.  Ms. Sloan's death was ruled a suicide by intentional asphyxiation.  (Id.) However, the Santa Cruz Grand Jury found multiple systemic breakdowns that lead to her death.  Namely, the Grand Jury found that County Defendants did not conduct the hourly routine safety checks to determine whether an inmate was alive.  Secondly, the Grand Jury found that the Santa Cruz Main Jail permitted inmates, including Ms. Sloan, to cover their cell windows in their solid metal cell doors in direct violation of jail rules.  Failure to observe Ms. Sloan and inspect her cell resulted in her, over the course of likely weeks, chiseling away a cement wall to expose a pipe from which she hung herself.  The Grand Jury found that Ms. Sloan's cell contained multiple violations.  More alarming, the Grand Jury found that the County corrections staff intentionally falsified observation logs for Ms. Sloan's unit on the day of her death.  The observation log noted that a corrections officer had observed Ms. Sloan's cell on five occasion on the night of her death.  However, after reviewing the video from Ms. Sloan's unit, the Grand Jury found that only one of the reported five observation checks had actually been conducted.  (Id.)

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

47.    The Grand Jury found that CFMG and the Crisis Intervention Team had inadequate document procedures and lax record keeping for the mental health care of inmates.  (Id.)

48.    In November 2015, 23 year-old Kristin Deluca died at the Santa Cruz County Jail from acute heroin detox four days after being arrested for being under the influence.  (Exhibit C, Another Death in Jail, Grand Jury Report.)  Her official cause of death was determined to be acute aspiration pneumonia, dehydration and electrolyte imbalance due to protracted vomiting associated with heroin withdrawal.  In other words, Ms. DeLuca died after four days of vomiting and then inhaling her own vomit that developed into pneumonia.  The Santa Cruz County Grand Jury concluded that CFMG did not adhere to state policies where it did not specify what symptoms necessitate immediate transfer to a hospital or other medical facility.  The Grand Jury also found that the Santa Cruz County Jail was not accredited by the California Medical Association-Institute for Medical Quality.  The Santa Cruz Grand Jury strongly recommended that the County obtain independent medical oversight of CFMG and review its conduct in light of the large number of deaths in the immediate aftermath of CFMG obtaining the medical service provide contract in 2012.  (Id.)

49.    In October 2019, pretrial detainee German Carrillo was found dead in his cell, the result of a homicide by strangulation by his two cellmates.  Santa Cruz County Jail personnel did not discover Mr. Carrillo's body until 24 to 36 hours after he was murdered.  On information and belief, Jail staff was only alerted to inspect Mr. Carrillo's cell due to the overwhelming miasma emanating from it.  The Sheriff-Coroner's report noted that Mr. Carrillo's cell window was covered in violation of jail rules.  On information and belief, COUNTY defendants knew that the emergency button in Mr. Carrillo's unit did not function.  On information and belief, County Jail personnel routinely fails to go into inmate cells during hourly security checks or require inmates to come out.  Therefore, staff is unable to adequately perceive, through the small window the true well-being of the inmates.  Instead, the well-established jail practice is to merely look in the cell window and scan an electronic card on the outside of the cell door.  Jail officials placed Mr. Carrillo, who had no prior criminal history, including convictions or arrests, in a two person cell with two other inmates, both of whom were known violent offenders.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

50.   The Santa Cruz Grand Jury concluded that County Defendant Sheriff had failed to implement recommendations in their 2013-2014 and 2014-2015 specifically formulated to address inmate health risks and prevent inmate deaths.  (Exhibit C, Another Death in Jail.)

51.  Tamario Smith was a disabled individual suffering from a mental impairment that substantially limited one or more major life activities.  Tamario Smith was a qualified individual with a disability for purposes of the Americans with Disabilities Act and the Rehabilitation Act.

52.  Plaintiffs allege, on information and belief, that most of the emergency buttons in the M-Unit cells, including the button in the cell housing MR. SMITH, did not work at the time of his death. On information and belief, the buttons had not worked for so long in the M-Unit, with the jail staff's knowledge, that inmates could no longer rely on the expectation that the buttons provided any degree of safety.  For many years prior to MR. SMITH'S death, emergency buttons in the M-Unit did not work and do not presently work.  Defendant HART is the final policy maker for the Santa Cruz County Jail.  It is the policy of Defendant HART to not provide functioning in-cell emergency buttons to inmates.  The jail also has a longstanding custom and practice of failing to provide functioning in-cell emergency buttons despite the preexistence of such buttons in each cell.  Failure to provide a functioning emergency button was a moving force behind MR. SMITH'S death where he became ill and could not obtain medical help from jail staff.  Defendant HART's policy, practice and custom of deliberate indifference towards the maintenance and inspection of emergency safety equipment was a substantial factor and moving force in causing MR. SMITH'S injuries and death.  Therefore, Defendant HART acted with deliberate indifference to the welfare and safety of MR. SMITH by having a policy, practice and custom of not providing inmates with functioning emergency buttons.

53.  COUNTY deputies and staff, and DOES 3-30, recklessly and with deliberate indifference, failed to appropriately classify and monitor inmates, to maintain properly functioning emergency call buttons, failed to inspect cells and remove dangerous objects and/or liquids.

54.  COUNTY deputies and staff, WELLPATH/CFMG and DOES 3-50, recklessly and with deliberate indifference, failed to immediately and appropriately respond to MR. SMITH'S medical needs; specifically by not correctly diagnosing him on April 21, 2020, and prescribing MR. SMITH

19.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

to consume more water despite his documented history of suffering from Rhabdomyolysis and schizophrenia, causing MR. SMITH to suffer a horrendous final episode of vomiting that then resulted in his death.

55.   With reckless and callous disregard for his safety, individually named Defendants and DOE Defendants failed to properly inspect and take reasonable measures to observe and check on MR. SMITH'S cell for his safety and protection –all as required by law, regulations and generally accepted standards.   Plaintiffs allege, on information and belief, that Defendants not only permitted MR. SMITH to drink copious amounts of water, but encouraged and prescribed MR. SMITH to do so, despite the known fatal consequences of rhabdomyolysis and psycho polydipsia.   Plaintiffs allege, on information and belief, that MR. SMITH made statements regarding his desire to drink cleaning fluid and County Defendants permitted MR. SMITH, a known active schizophrenic, to have access to cleaning fluid from an unsecured and dirty mop bucket.   Plaintiffs allege, on information and belief, that MR. SMITH was seen on video taken from the M-Unit taking pink cleaning fluid from the mop bucket.   Plaintiffs allege, on information and belief, that County Defendants knew that MR. SMITH consumed cleaning fluid in the days and hours prior to his death and did nothing to prevent him from doing so.   Defendant HART is the final policy maker for the Santa Cruz County Jail.   The California Board of State and Community Corrections, Title 15, Division 1, Chapter 1, Subchapter 4, Section 1027.5 requires hourly direct visual safety checks for inmates.   Santa Cruz County Jail policy Manual section 503.3 requires, "Safety checks shall be done by personal observation of the correctional officer and shall be **sufficient to determine whether the inmate is experiencing any stress or trauma**."   It is the customary policy of Defendant HART, despite the foregoing official written policy, to not have jail personnel inspect inmate cells in a manner consistent with the jail policy "to determine whether the inmate is experiencing any stress or trauma."   These safety checks are not conducted in manner where the corrections officers are required to enter the cell.   Instead, they merely look through the small window, assuming the window is not obstructed.   This is an intentional and conscious decision in violation of its own policy as looking through the small window, assuming it is not obstructed, does not provide sufficient information to determine whether the inmate is experiencing stress or trauma.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

Defendant HART's policies of failing to provide working emergency buttons, the failure to inspect and remove contraband and dangerous materials such as cleaning fluid in a drinking bottle from a known schizophrenic who suffered from Rhabdomyolysis, constituted unreasonably dangerous conditions. All COUNTY Defendants, and DOE Defendants 3-50, were deliberately indifferent to the enhanced risk and danger to MR. SMITH from these dangerous conditions in and around his jail cell.

56.   Additionally, COUNTY Defendants, including SHERIFF HART, DEPUTY RAMOS, DIRECTORS HALL and REIRA, intentionally failed to provide adequate mental health services to MR. SMITH, who was a diagnosed schizophrenic who also suffered from Rhabdomyolysis. The aforementioned Defendants failed to take reasonable measures to ensure that MR. SMITH'S health was treated with medication and in accordance with community standards as required by law and regulations. ALL COUNTY Defendants, including SHERIFF HART, DEPUTY RAMOS, and DIRECTORS HALL and RIERA and DOES 1-50, all failed to properly and adequately monitor and care for MR. SMITH'S safety to abate the risk of death, despite the fact that a reasonable officer and county official in such circumstances would have appreciated the high risk to MR. SMITH given his dual diagnosis as a schizophrenic suffering from a "severe" psychosis and Rhabdomyolysis, his inability to make appropriate judgments about his own medical and health needs, his unfettered access to water, coffee, and cleaning fluids and the failure to provide functioning emergency buttons so that MR. SMITH could summon medical/jail personnel for help.

57.   Pursuant to policies and procedures set by Defendants HART and RAMOS, MR. SMITH received no follow-up medical care despite the obvious signs that he was suffering from hyponatremia.

58.   By failing to set forth procedures on proper care of inmates, including mandates that inmates who suffer from hyponatremia be observed in the Main Jail's medical unit; that they be monitored regularly by a medical doctor; that the inmate be transported to a hospital when exhibiting obvious signs of hyponatremia, Defendants HART and RAMOS were deliberately indifferent to TAMARIO SMITH'S serious medical need.

59.   All Defendants' actions and omissions and the manner and duration in which MR. SMITH was incarcerated was contrary to law and generally accepted practices and jail procedures,

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

causing the wrongful death of MR. SMITH.

60.     At all material times and, alternatively, the actions and omissions of each Defendant were intentional, and/or wanton and/or willful, and/or conscious shocking, and/or reckless, and/or callous, and/or malicious, and/or deliberately indifferent to Plaintiff's and Decedent's rights, and/or grossly negligent, and/or negligent.

61.     As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, all Plaintiffs sustained the following injuries and damages, past and future, including, but not limited to:

     a.   Wrongful death of TAMARIO SMITH

     b.   Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace and moral support.

     c.   Emotional distress from the violations of their personal Constitutional rights, including grief, sorrow, anxiety, sleeplessness, humiliation, and indignity;

     d.   Loss of enjoyment of life

     e.   All other legally cognizable special and general damages;

     f.   Violations of state and federal constitutional rights; and,

     g.   All damages and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, California Civil Code §§ 52 and 52.1, and as otherwise allowed under California and United States statutes, codes, and common law.

62.     As a direct and proximate result of each Defendants' acts and/or omissions as set forth above, Plaintiffs FELICIA SMITH and MICHAEL WARREN-SMITH, as co-Successors in Interest of Decedent TAMARIO SMITH, sustained the following injuries and damages, past and future, including, but not limited to:

     a.   Coroner's fees, funeral and burial expenses;

     b.   TAMARIO SMITH's loss of life,  pursuant to federal civil rights law;

     c.   TAMARIO SMITH's conscious pain and suffering, pursuant to federal civil rights law; and

     d.   All damages and penalties recoverable under 42 U.S.C. §§ 1983 and 1988,

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

California Civil Code §52, and as otherwise allowed under California and United States statutes, codes and common law.

**FIRST CAUSE OF ACTION**
**(Violation of Due Process (42 U.S.C. §1983))**
**All Plaintiffs against HART, RAMOS, and Does 1-50**

63.  Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

64. By actions and omissions described above, Defendants SHERIFF HART, CHIEF DEPUTY RAMOS, and DOES 1-50, acting under the color of state law in their individual capacities, knew or should have known that TAMARIO SMITH suffered from both rhabdomyolysis and schizophrenia which resulted in his inability to care for himself, medical and jail personnel failed to properly medicate and treat TAMARIO SMITH's psychological and physical health needs; that medical and jail personnel allowed MR. SMITH unfettered access to water, coffee and cleaning fluids, that medical and jail personnel advised MR. SMITH to drink more water despite his known risk to kidney failure, overconsumption of water and/or psychogenic polydipsia; failure to conduct routine cell inspections, and failure to ensure that emergency buttons were functioning, would result in TAMARIO SMITH's death.

65.     The listed Defendants ignored, delayed, or denied to MR. SMITH preventative measures that would have abated his risk of suffering from hyponatremia and death.  Defendants SHERIFF HART, CHIEF DEPUTY RAMOS, and DOES 1-50, further knew of and disregarded the risk to MR. SMITH of allowing him unfettered access to water, coffee and cleaning fluids while knowing that MR. SMITH suffered from two medical conditions, Schizophrenia and Rhabdomyolysis, that can result in hyponatremia and death, without proper and lawful monitoring for his safety and medical needs.  Defendants housed MR. SMITH in a unit that did not have functioning emergency buttons, thus depriving MR. SMITH of the ability to summon help while he was experiencing medical distress.   Defendants failed to properly monitor and observe MR. SMITH to ensure that he was not in distress or suffering from a medical crisis.  As a result of the Defendants' deliberate indifference and reckless disregard for MR. SMITH'S physical safety, health

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

and well-being, Plaintiffs suffered damages and deprivation of constitutional rights, as described herein.

66.     By the actions and omissions described above, the individually named Defendants violated 42 U.S.C. §1983, depriving Plaintiffs and Decedent of the following well-settled constitutional rights that are protected by the First, Fourth, and Fourteenth Amendments to the United States Constitution:

> a.  The right to be free from reckless disregard for the substantial risk of serious harm to SMITH'S personal, physical safety while in custody and confined in jail as a pretrial detainee, as secured by the Fourth and Fourteenth Amendments;

> b.  The right to be free from wrongful government interference with familial relationships and Plaintiffs' right to companionship, society, and support, as secured by the First and Fourteenth Amendments.

67.     The listed Defendants' failure to intervene, prevent, or stop the constitutional violations by others, of which each listed Defendant knew or must have known, and when each listed Defendant was in a position to so intervene when such violations were occurring, also renders such Defendant(s) liable for these violations.

68.     All Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs and Decedent of the rights described herein, knowingly, maliciously, and with deliberate indifference and conscious and reckless disregard for whether the rights and safety of Plaintiffs (individually and on behalf of TAMARIO SMITH) and others would be violated by their acts and/or omissions.

69.     As a proximate result of the foregoing wrongful acts and/or omissions, Plaintiffs sustained injuries and damages, as set forth above in ¶¶ 61-62.  Plaintiffs are therefore entitled to general and compensatory damages in an amount to be proven at trial.

70.     In committing the acts alleged above, all the individually named Defendants and DOE Defendants acted maliciously, oppressively, and/or with reckless disregard for the rights, safety, and well-being of Plaintiffs and Decedent, and by reasons thereof, Plaintiffs are entitled to punitive damages and penalties allowable under 42 U.S.C. §1983, California Code of Civil Procedure §§377.20 et seq., and other state and federal law against these individual Defendants; no punitive damages are sought directly against the municipal Defendants.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

71.     Plaintiffs are also entitled to reasonable costs and attorney's fees under 42 U.S.C. §1988 and other applicable California codes and laws.

## SECOND CAUSE OF ACTION
### (Deliberate Indifference to Serious Medical Needs (42 U.S.C. §1983))
### ALL PLAINTIFFS AGAINST ALL DEFENDANTS

72.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in this complaint, as though fully set forth here.

73.     By actions and omissions described above, Defendants SHERIFF HART, CHIEF DEPUTY RAMOS, DIRECTOR HALL and DIRECTOR RIERA and DOES 1-50, acting under the color of state law in their individual capacities, knew or should have known that, violated TAMARIO SMITH'S Fourteenth Amendment right to medical care.

74.     The listed Defendants knew that MR. SMITH faced serious medical and mental health needs.  The listed Defendants knew that TAMARIO SMITH suffered from schizophrenia and Rhabdomyolysis.  On information and belief, Defendants failed to medicate TAMARIO SMITH properly and in accordance with his prescribed dosage, preventing TAMARIO SMITH from making informed decisions regarding his own well-being.  Defendants incorrectly diagnosed TAMARIO SMITH as suffering from dehydration when in fact he was over-hydrated and suffering symptoms associated with overhydration and intentionally told him to consume more water, despite the obvious and apparent risk of TAMARIO SMITH suffering from hyponatremia as a direct result of this erroneous medical advice.  Defendants denied TAMARIO SMITH needed medical care when he exhibited further symptoms of hyponatremia and Rhabdomyolysis and did nothing to treat him. Defendants also allowed MR. SMITH unfettered access to coffee, water, and cleaning fluids despite the obvious and known risks of psychogenic polydipsia in schizophrenics, kidney complications due to MR. SMITH's Rhabdomyolysis and basic standards of health and hygiene.

75.     By the actions and omissions described above, the individually named Defendants violated 42 U.S.C. §1983, depriving Plaintiffs and Decedent of the following well-settled constitutional rights that are protected by the First, Fourth, and Fourteenth Amendments to the United States Constitution:

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

a.  The right to be free from reckless disregard for the substantial risk of serious harm to SMITH'S medical needs while in custody and confined in jail as a pretrial detainee, as secured by the Fourth and Fourteenth Amendments;

b.  The right to be free from wrongful government interference with familial relationships and Plaintiffs' right to companionship, society, and support, as secured by the First and Fourteenth Amendments.

76.     The listed Defendants' failure to intervene, prevent, or stop the constitutional violations by others, of which each listed Defendant knew or must have known, and when each listed Defendant was in a position to so intervene when such violations were occurring, also renders such Defendant(s) liable for these violations.

77.     All Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs and Decedent of the rights described herein, knowingly, maliciously, and with deliberate indifference and conscious and reckless disregard for whether the rights of Plaintiffs (individually and on behalf of TAMARIO SMITH) and others would be violated by their acts and/or omissions.

78.     As a proximate result of the foregoing wrongful acts and/or omissions, Plaintiffs sustained injuries and damages, as set forth above in ¶¶ 61-62.  Plaintiffs are therefore entitled to general and compensatory damages in an amount to be proven at trial.

79.     In committing the acts alleged above, all the individually named Defendants and DOE Defendants acted maliciously, oppressively, and/or with reckless disregard for the rights, safety, medical needs and well-being of Plaintiffs and Decedent, and by reasons thereof, Plaintiffs are entitled to punitive damages and penalties allowable under 42 U.S.C. §1983, California Code of Civil Procedure §§377.20 et seq., and other state and federal law against these individual Defendants; no punitive damages are sought directly against the municipal Defendants.

80.     Plaintiffs are also entitled to reasonable costs and attorney's fees under 42 U.S.C. §1988 and other applicable California codes and laws.

## THIRD CAUSE OF ACTION
### (Wrongful Death (42 U.S.C. §1983))
### All Plaintiffs against All Defendants

81.  Plaintiff realleg all prior paragraphs of this complaint and incorporate the same herein

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

by this reference.

82. Defendants committed wrongful acts which proximately caused the death of TAMARIO SMITH.

83. Defendants failed to properly communicate the serious nature of TAMARIO SMITH'S dual diagnosis of Rhabdomyolysis and schizophrenia, the nature of psychogenic polydipsia, the proper protocol for treatment, and the need to limit MR. SMITH'S water intake.  They failed to communicate that access to water, coffee and cleaning fluids could kill TAMARIO SMITH.  They failed to warn that TAMARIO SMITH suffered from active hallucinations, was responding to internal stimuli and that over consumption of water is a known behavior or people who suffer from schizophrenia.

84. Nevertheless, despite displaying symptoms of rhabdomyolysis and hyponatremia, Defendants encouraged, prescribed and directed MR. SMITH to drink more water.

85. WELLPATH/CFMG medical personnel, who was aware of MR. SMITH's dual diagnosis failed to implement any measures to monitor MR. SMITH or provide him with adequate psychiatric care or medication.

86. All Defendants failed to recognize that MR. SMITH was suffering from hyponatremia, was in medical distress and failed to render aid or transport him to the hospital, leaving him to die in his jail cell.

87. Defendants deprived MR. SMITH of his rights under the United States Constitution to due process of law under the Fourteenth Amendment.

88. All Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs and Decedent of the rights described herein, knowingly, maliciously, and with deliberate indifference and conscious and reckless disregard for whether the rights and safety of Plaintiffs (individually and on behalf of TAMARIO SMITH) and others would be violated by  their acts and/or omissions.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

89.   The conduct alleged herein violated TAMARIO SMITH's rights alleged above thereby resulting in a deprivation of Plaintiffs FELICIA SMITH and MICHAEL WARREN-SMITH which has legally, proximately, foreseeably and actually caused Plaintiffs to suffer emotional distress, pain and suffering, and further general and special damages according to proof at the time of trial.

90.   As a proximate result of the foregoing wrongful acts and/or omissions, Plaintiffs sustained injuries and damages, as set forth above in ¶¶ 61-62.  Plaintiffs are therefore entitled to general and compensatory damages in an amount to be proven at trial.

91.   In committing the acts alleged above, all the individually named Defendants and DOE Defendants acted maliciously, oppressively, and/or with reckless disregard for the rights, safety, and well-being of Plaintiffs and Decedent, and by reasons thereof, Plaintiffs are entitled to punitive damages and penalties allowable under 42 U.S.C. §1983, California Code of Civil Procedure §§377.20 et seq., and other state and federal law against these individual Defendants; no punitive damages are sought directly against the municipal Defendants.

92.   Plaintiffs are also entitled to reasonable costs and attorney's fees under 42 U.S.C. §1988 and other applicable California codes and laws.

**FOURTH CAUSE OF ACTION**
**(Right of Association (42 U.S.C. §1983))**
**By Plaintiffs Felicia Smith and Michael Warren-Smith against All Defendants**

93.   Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

94.   Defendants deprived TAMARIO SMITH of his rights under the United States Constitution to due process of law and denied him medical care.

95.   All Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs and Decedent of the rights described herein, knowingly, maliciously, and with deliberate indifference and conscious and reckless disregard for whether the rights and safety of Plaintiffs  and others would

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

be violated by their acts and/or omissions. The aforementioned acts and/or omissions of Defendants in being deliberately indifferent to serious medical needs, health and safety; and violating TAMARIO SMITH's civil rights; caused the untimely and wrongful death of MR. SMITH, deprived Plaintiffs FELICIA SMITH and MICHAEL WARREN-SMITH of their liberty interest in the parent-child relationship in violation of their substantive due process rights as defined by the First and Fourteenth Amendments to the United States Constitution.

96. There was no legitimate penological interest in failing to communicate critical medical information and denying access to medical care to an inmate in obvious medical distress and leaving him unattended, with unfettered access to water, coffee and cleaning fluids, vomiting all over his cell without a working emergency button with deliberate indifference. County Defendants violated the California Board of State and Community Corrections, Title 15, Division 1, Chapter 1, Subchapter 4, Section 1027.5 which requires hourly direct visual safety checks for inmates. County Defendants also violated their own Jail policy Manual section 503.3 which requires that, "Safety checks shall be done by personal observation of the correctional officer and shall be sufficient to determine whether the inmate is experiencing any stress or trauma." Defendants' actions shock the conscience.

97. The deprivation of the rights alleged above has destroyed the Constitutional rights of TAMARIO SMITH'S parents, FELICIA SMITH and MICHAEL WARREN-SMITH, to the society and companionship of their son which is protected by the substantive due process clause of the Fourteenth Amendment.

98. The conduct alleged herein violated MR. SMITH's rights alleged above thereby resulting in a deprivation of Plaintiffs' rights alleged above which has legally, proximately, foreseeably and actually caused Plaintiffs to suffer emotional distress, pain and suffering, and further damages according to proof at the time of trial.

### FIFTH CAUSE OF ACTION
### (Failure to Properly Train (42 U.S.C. §1983))

29.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

**By all Plaintiffs against Defendants HART, RAMOS, HALL, REIRA, WELLPATH/CFMG, Does 1, 2, 30-50**

99.  Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

100.  Defendants HART, RAMOS, HALL, REIRA, WELLPATH/CFMG, and Does failed to train Doe Defendants in the performance of their duties in drafting critical medical documents for patients who suffer from conditions that could be fatal.

101.  Defendants Does, HART, RAMOS, HALL, REIRA and WELLPATH/CFMG failed to properly train their employees with regard to the need to communicate critical medical information to jail personnel.

102.  Defendants of the Santa Cruz Sheriff's Department, acting under color of law, have subjected TAMARIO SMITH and other persons similarly situated to a pattern of conduct consisting of a continuing, widespread and persistent pattern of unconstitutional misconduct.

103.  Defendants HART, RAMOS, HALL, REIRA and WELLPATH/CFMG and Does 1, 2, 30-50 have failed to maintain adequate and proper training necessary to educate deputies and medical staff as to the Constitutional rights of inmates; to prevent the consistent and systemic failure to provide medical care.

104.  There has been an official policy of acquiescence in the wrongful conduct.  Defendants failed to promulgate corrective policies and regulations in the face of repeated Constitutional violations.  (See Exhibit B-C.)

105.  Defendants HALL, REIRA, WELLPATH/CFMG, and Does failed to train medical and psychiatric doctors and nurses on the necessary care of inmates suffering from serious medical conditions including hyponatremia, and they failed to implement policies and procedures with respect to proper training.

106.  Defendants HALL, REIRA, WELLPATH/CFMG failed to train medical and

30.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

psychiatric doctors and nurses on documenting and reading critical information on medical HARTs to ensure continuity of care.

107.  Defendants County of Santa Cruz, Does 1, 2, 30-50 with deliberate indifference, disregarded a duty to protect the public from official misconduct.

108.  Despite their knowledge of previous instances of wrongful deaths in the jails, Defendants failed to properly train or retrain their deputies and medical staff to prevent deaths of inmates.

109.  The failure of the supervisory defendants to promulgate or maintain constitutionally adequate training was done with deliberate indifference to the rights of TAMARIO SMITH and others in his position.

110.  As a direct result of the aforementioned Defendants' deliberate indifference to his serious medical needs, decedent TAMARIO SMITH suffered physical and psychological injuries and death.

111.  As a direct consequence of the failures of Does, HALL, REIRA, and WELLPATH/CFMG to properly train their officers and medical staff, TAMARIO SMITH suffered unconstitutional treatment and inhumane conditions during his detention.

### SIXTH CAUSE OF ACTION
**(Failure to Properly Supervise and Discipline (42 U.S.C. §1983))**
**All Plaintiffs against Defendants HART, RAMOS, HALL, REIRA, WELLPATH/CFMG, Does 1, 2, 40-50**

112.  Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

114.  Defendants HART, RAMOS, HALL, REIRA, WELLPATH/CFMG, failed to properly supervise and discipline defendant Does in the performance of their duties in drafting critical medical documents for patients who suffer from conditions that could be fatal.

115.  Defendants RAMOS, HALL, REIRA, WELLPATH/CFMG, failed to properly

31.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

supervise their employees with regard to the need to communicate critical medical information to jails that would house their patients.

116. As a result of the Defendants' historical failure to properly supervise and discipline their employees, Defendant Does were deliberately indifferent to TAMARIO SMITH'S serious medical needs.

117. Defendant WELLPATH/CFMG failed to properly supervise Defendant Does with regard to the need to communicate critical medical information and the need to provide adequate care. As a result, Defendant Does were deliberately indifferent to the serious medical needs of TAMARIO SMITH.

118. Defendants County of Santa Cruz, Does, HALL, and REIRA failed to promulgate and enforce adequate policies and procedures related to misconduct and the violation of citizen's civil rights by deputies and medical staff.

119. Defendants County of Santa Cruz, Does, and HART have a widespread history of ratifying employee misconduct by failing to conduct appropriate investigations.

120. Defendants were aware of previous instances of untimely and wrongful deaths in the Santa Cruz County Jail and failed to properly supervise and discipline their employees or agents.

121. Defendants County of Santa Cruz, Does, HART and RAMOS refused to investigate misconduct and/or took no remedial steps or action against deputies and medical staff.

122. Upon information and belief, supervising officers were made aware of the misconduct or witnessed the Constitutional violations committed by the deputies and medical staff but failed to supervise or discipline them.

123. There has been an official policy of acquiescence in the wrongful conduct. Defendants failed to promulgate corrective policies and regulations in the face of repeated Constitutional violations.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

124.  Defendants condoned and acquiesced in the abusive behavior of their subordinates by refusing to retrain them, discipline them, or correct their abusive behavior.

125.  Defendants were, or should have been, aware that the policy regarding supervision and discipline of staff wo violated the civil rights of inmates or citizens was so inadequate that it was obvious that a failure to correct it would result in further incidents of dangerous and lawless conduct perpetrated by their subordinates.

126.  As a result of the Defendants' historical failure to properly supervise and discipline deputies, Defendants were deliberately indifferent to the needs of Plaintiff.  The failure to supervise and discipline was the moving force behind the misconduct of the deputies, the denial of medical care on the Plaintiff, and the resulting pain and suffering of death.

**SEVENTH CAUSE OF ACTION**
**(Failure to Properly Investigate (42 U.S.C. §1983))**
**(All Plaintiffs against County of Santa Cruz, HART, RAMOS, HALL, REIRA,**
**and Supervisor Does 30-40)**

127.  Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

128.  Defendant County of Santa Cruz maintained a longstanding pattern of failing to properly investigate misconduct.

129.  Upon information and belief, Defendants maintained a de facto policy of not obtaining accurate and timely reports from witnesses and staff alleged to have been involved in misconduct or witnessed misconduct.

130.  Upon information and belief, Defendants maintained a de facto policy of allowing death investigators to intimidate witnesses; to ask leading questions, suggesting the answers; and to summarize the interviews of inmates in their investigation files that distort the actual recorded statements of witnesses.

131.  Upon information and belief, Defendants gave families of inmates limited information

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

regarding the deaths of their loved ones, on one occasion, waiting 6 months to reveal how an inmate died.

132.  Defendants County of Santa Cruz, HART, RAMOS, HALL, REIRA and Supervisor Does 30-40 historically and systematically engaged in a pattern of failure to properly investigate misconduct of deputies and medical staff.

133.  The longstanding pattern of failing to properly investigate staff misconduct led to the actions or inactions of the deputies and medical staff who denied medical care to MR. SMITH. Defendants' pattern of failing to investigate created a culture of unconstitutional acts and acts that violate the Jail's own policies and procedures.

134.  Defendant HART was personally aware of these failures but took no action to prevent harm to inmates, including TAMARIO SMITH.

135.  Defendants HALL and REIRA and DOES 1-50 failed to properly investigate the misconduct of the medical staff despite a history of medical neglect and preventable deaths in the Santa Cruz County Jail.

136.  The Defendants in this case knew that their actions would not be investigated and that they would not be disciplined for their actions.

137.  The systemic failures by all defendants to properly investigate led to the misconduct of the deputies and medical staff in this case.

138.  As a result of all Defendants' historical failure to properly investigate Defendants were deliberately indifferent to the needs of Plaintiff TAMARIO SMITH.  The failure to investigate was the moving force behind the denial of medical care, and due process on the decedent TAMARIO SMITH and the resulting pain and suffering and death.

**EIGHTH CAUSE OF ACTION**
**(42 U.S.C. §1983- *Monell* and Supervisory Liability)**
**ALL PLAINTIFFS AGAINST COUNTY OF SANTA CRUZ**

139.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in this complaint, as though fully set forth here.

140.   Defendant County of Santa Cruz maintained an unconstitutional policy, ordinance or regulation which allowed their deputies and medical staff to deny medical care to inmates.

141.   There were longstanding and systemic deficiencies in the Santa Cruz County jails' treatment of inmates.  Deficiencies included improper cell checks, inadequate medical staffing, lack of required training and screening, diagnosis and treatment of medical and psychiatric conditions, lack of communication of necessary and critical medical information among staff, and non-compliant medical policies and procedures.

142.   Upon information and belief, the permanent, widespread, well-settled practice or custom of Defendant was to deny treatment to inmates in serious medical distress and to place inmates in administrative segregation or general population instead of the medical ward when inmates are in need of medical care.

143.   There was a custom and practice of not properly screening inmates for medical care and treatment.

144.   There was a custom and practice of failing to communicate the medical needs of inmates between the medical staff and deputies.

145.   There was a custom and practice of not properly checking in on the welfare of inmate, even those inmates known to have serious physical or psychiatric needs.

146.   There was a custom and practice of failing to conduct proper cell checks as required by the County's own written policies.

147.   There was a custom and practice of falsifying information during investigations of misconduct and misleading the investigations by the Grand Jury.

148.   Defendant County of Santa Cruz was deliberately indifferent to the widespread unconstitutional acts by its staff and failed to set forth appropriate policies regarding the treatment of inmates.

149.   During the relevant period, all Defendant deputies, medical staff, and Does 3-40, were

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

acting pursuant to the policy of Defendant County of Santa Cruz.

150.   Despite notice of these safety and medical issues from annual reports from the Santa Cruz Grand Jury, Santa Cruz County Jail had one of the highest county jail mortality rates per capita of inmates based on data from 2012-2015.

151.   This pattern of tragic deaths supports an inference that Defendants are promoting and maintaining a culture of deliberate indifference to human life at the Jail.

152.   Defendant County of Santa Cruz was deliberately indifferent to the right of the plaintiff and others to be free from, and protected from, harm by the misconduct of its employees.

153.   The Sheriff Department's longstanding practice or custom was unconstitutional in that it was deliberately indifferent to a substantial risk of serious harm to inmates.

154.   As supervisors, Defendants, SHERIFF HART, CHIEF DEPUTY RAMOS  and DOES 30-40, acting under the color of state law, failed to set forth any policies or conduct any self-evaluation procedures and training under the American with Disabilities Act and the Rehabilitation Act for its personnel about how to handle encounters with persons who have mental illness or another disability, despite the fact that each knew or must have known that MR. SMITH was diagnosed with Rhabdomyolysis and Schizophrenia and therefore, was at grave risk of hyponatremia and death.  Each Defendant failed to properly supervise and train other Defendants and jail staff who were responsible for the inspection of cells and supervision of inmate conduct, and each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, with deliberate indifference to the rights and needs of MR. SMITH.  Each of these supervising Defendants either directed his or her subordinates in conduct that violated Decedent's rights, OR set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive Decedent of rights, OR knew his or her subordinates were engaging in acts likely to deprive Decedent of rights and failed to act to prevent his or her subordinate from engaging in such conduct, OR disregarded the consequences of a known or obvious training deficiency that he or she must have known would cause subordinates to violate Decedent's rights, and in fact did cause the violation of Decedent's rights.  (See, Ninth

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

Circuit Model Civil Jury Instruction 9.4).  Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of Decedent's rights.

155.    Plaintiffs allege, upon information and belief, the unconstitutional actions and/or omissions of the individually named COUNTY OF SANTA CRUZ Defendants were pursuant to the following customs, policies, practices and/or procedures of the COUNTY OF SANTA CRUZ, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officials for the COUNTY and its Sheriff's Department including, but not limited to, Defendants HART, CLARK and DOES 30-40:

>    a.  To fail to properly classify, house, and/or monitor inmates, with lawful in-person monitoring, with legally required cell alarms, including failing to consider in any way the clear and obvious danger of placing inmates in cells with dangerous and violent inmates and without the frequent, logged observations required by law;

>    b.  To fail to institute, require, and enforce proper and adequate training, supervision, policies and procedures concerning the appropriate classification of inmates, handling, housing, supervision of inmates, and assurance and/or inspection of each cell's emergency call buttons to ensure that they were properly functioning.

>    c.  To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (b) above, when the need for such was obvious, with deliberate indifference to the rights and safety of Plaintiffs, Decedent, and the public, and in the face of an obvious need for such policies, procedures and training programs.

156.    In the alternative, upon information and belief, Defendant COUNTY OF SANTA CRUZ may have instituted policies or training addressing some or all of the topics listed above, but with deliberate indifference to citizen's rights, failed to properly oversee, enforce, and/or properly carry out such policies and/or training.

157.    The above-described customs, policies, practices, and/or procedures of the COUNTY were a moving force and/or proximate cause of the deprivation of Plaintiff's and Decedent's constitutional rights, in violation of 42 U.S.C. §1983.

158.    Defendant COUNTY is also liable for the violations of Plaintiffs' and Decedent's rights by their final policy makers, including SHERIFF HART and CHIEF DEPUTY RAMOS, as

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

described above.  (See Ninth Circuit Model Civil Jury Instructions 9.6).

159.    The unconstitutional actions and/or omissions of the individually named Defendants, DOES 3-40, other Sheriff's Department and COUNTY personnel, were approved, tolerated, and/or ratified by policy making officers for the COUNTY OF SANTA CRUZ, including, but not limited to, SHERIFF HART and CHIEF DEPUTY RAMOS.  Plaintiffs are informed and believe, and thereupon allege, the details of this incident have been revealed to the authorized policy makers within the COUNTY OF SANTA CRUZ and Santa Cruz County Sheriff's Department, and that such policymakers have direct knowledge of the fact that TAMARIO SMITH was unlawfully denied protection for his serious medical needs due to their and their subordinates' misconduct and violation of Decedent's rights.  Notwithstanding this knowledge, the authorized policymakers within the COUNTY and its Sheriff's Department have approved of the individually named Defendants' and DOES 3-40's conduct and decisions in this matter to the extent such individuals were under their supervision and oversight, and have made a deliberate, conscious and affirmative choice to endorse and ratify such conduct and decisions, and the basis for them, which resulted in the death of TAMARIO SMITH.  By so doing, the authorized policymakers within the COUNTY and its Sheriff's Department have shown affirmative agreement with the conduct of the individual Defendants and other employees/agents under their supervision, and have ratified the unconstitutional acts of these individual Defendants, employees, and agents.

160.    The aforementioned choices, customs, policies, practices, and procedures; the failure to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY OF SANTA CRUZ, HART, CLARK and DOES 3-40 were a moving force and/or a proximate cause of the deprivations of Plaintiffs' and Decedent's clearly established and well-settled constitutional rights, in violation of 42 U.S.C. §1983, as more fully set forth above in 66¶, 75.

161.    As a direct and proximate result of the foregoing unconstitutional actions, omissions, customs, policies, practices, and/or procedures of Defendant COUNTY OF SANTA CRUZ, HART,

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

CLARK, and DOES 3-40, or the lack of adequacy thereof, Plaintiffs sustained serious and permanent injuries and damages and are entitled to damages, penalties, costs, and attorney's fees, as set forth above, in ¶61-62 and punitive damages against Defendants HART, RAMOS and DOES 3-40, in their individual capacity.

**NINTH CAUSE OF ACTION**
**(Wrongful Death- CCP §377.60,** *et seq.***)**
**All Plaintiffs against all Defendants**

162.  Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

163.  Defendants owed a duty of care to MR. SMITH, they breached their duty of care by committing wrongful acts alleged above, including but not limited to, failure to supervise MR. SMITH, failure to provide adequate and necessary medical care, and failure to provide working emergency buttons in cells so that MR. SMITH could summon help, which proximately caused the death of TAMARIO SMITH.  Specifically, Defendants deprived MR. SMITH of his rights under the United States Constitution to due process of law.

164.  Defendants denied TAMARIO SMITH access to necessary medical attention; failed to communicate critical medical information; failed to transport him to the hospital; failed to monitor and/or limit his water and coffee intake as well as allowed him unfettered access to toxic cleaning solutions; and left him in his own vomit and urine in his cell.

165.  Defendant WELLPATH/CFMG and Does 1, 2, and 40-50 failed to acknowledge and treat MR. SMITH's serious medical conditions of rhabdomyolysis and schizophrenia and encouraged MR. SMITH to drink more water, despite the obvious and grave risks of serious medical complications and death to MR. SMITH.  Defendants WELLPATH/CFMG and Does 1, 2, and 40-50 had access to TAMARIO SMITH's medical records, knew that he suffered from both rhabdomyolysis and schizophrenia and failed to communicate with medical and jail personnel to

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

monitor and restrict MR. SMITH's access to water, coffee and prevent him from accessing toxic cleaning chemicals.

166.  The County of Santa Cruz is responsible for the act of individual and Doe Defendants 3-39 under the theory of respondeat superior.

167.  The wrongful acts alleged above has destroyed the relationship between Plaintiffs and TAMARIO SMITH and has legally, proximately, foreseeably and actually caused severe emotional damages, including the loss of society, companionship, emotional distress, and further economic and non-economic damages according to proof at the time of trial.

### TENTH CAUSE OFACTION
### Negligence
### All Plaintiffs against all Defendants

168. Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

169.  Defendants had a duty to Plaintiff to act with ordinary care and prudence so as not to cause harm or injury to another.

170.  In evaluating, assessing and handling MR. SMITH's medical conditions, Defendants failed to comply with professional and legal standards.

171.  Defendants improperly, negligently, wrongfully and recklessly failed to provide necessary medical documentation and information to Santa Cruz County Jail personnel regarding TAMARIO SMITH's serious medical need.

172.  Defendants negligently, wrongfully, and recklessly failed to properly document MR. SMITH's serious medical and psychiatric condition; failed to communicate to the other jail staff regarding the need to monitor TAMARIO SMITH'S water and coffee consumption, deny him access to harmful and toxic cleaning fluids and failed to provide any medical care for a life-threatening condition.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

173.  Defendants improperly, negligently, wrongfully and recklessly failed to take any action to monitor TAMARIO SMITH despite his obvious symptoms of serious illness.

174.  Defendants negligently, wrongfully, and recklessly failed to render medical care to TAMARIO SMITH who is in physical and medical distress.

175.  Defendants improperly, negligently, wrongfully and recklessly failed to take any action to summon help or transport TAMARIO SMITH to the hospital despite his showing symptoms of suffering from hyponatremia.

176.  Defendants HART, RAMOS, HALL and REIRA, DOES 1, 2, 30-40, WELLPATH/CFMG, Does 40-50, improperly, negligently, wrongfully and recklessly failed to set forth policies regarding proper screening, evaluation, treatment and transportation of inmates suffering from a serious medical condition.

177.  Defendants HART, RAMOS, HALL and REIRA, DOES 1,2 and 30-40, WELLPATH/CFMG, Does 40-50, improperly, negligently, wrongfully and recklessly failed to conduct any self-evaluation of procedures and training under the Americans with Disability Act and the Rehabilitation Act for its personnel about how to handle encounters with persons who have mental illness, psychogenic polydipsia, or another disability.

178.  By engaging in the acts alleged herein, Defendants failed to act with ordinary care and breached their duty of care to TAMARIO SMITH.

179.  The County of Santa Cruz is responsible for the acts of Defendants HART, RAMOS, HALL, REIRA, DOES 3-39 under the theory of respondeat superior.

180.  Plaintiffs are informed and believe that Defendants County of Santa Cruz, HART, RAMOS, HALL, REIRA and Does 3-39, maintained policies, practices and procedures that allowed for and encouraged the denial of care which ultimately caused the death of TAMARIO SMITH. These policies, practices and procedures include without limitation Defendants' training procedures

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

and practices with respect to supervision of the officers and policies and procedures with regard to providing necessary medical attention.

181. By engaging in the acts alleged herein, all Defendants failed to act with ordinary care and breached their duty of care owed to Plaintiffs.

182. As a direct and proximate result of the Defendants' negligent conduct as described herein, TAMARIO SMITH suffered physically and mentally in the amount to be determined at the time of trial.

183. As a further result of the Defendants' negligent conduct, TAMARIO SMITH died.

184. As a further proximate result of the Defendants' negligent conduct, Plaintiffs FELICIA SMITH and MICHAEL WARREN-SMITH have lost their son and suffered great emotional and mental harm in the amount to be determined at the time of trial.

185. The conduct of the Defendants also amounts to oppression, fraud or malice within the meaning of Civil Code of Procedure 3294, *et seq.* and punitive damages should be assessed against each Defendant for the purpose of punishment for the sake of example.

### ELEVENTH CAUSE OF ACTION
**(Violation of the Americans with Disability Act of 1990**
**42 U.S.C. §12101, *et seq.*)**
**All Plaintiffs against the County of Santa Cruz and WELLPATH/CFMG**

186. Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

187. Pursuant to 42 U.S.C. §12132, "Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

188. Under Title II of the Americans with Disability Act, public entities are required to make

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

reasonable modifications to avoid discrimination on the basis of disability.  The ADA sets an affirmative requirement to act appropriately with respect to inmates with mental and physical disabilities.

189.  The ADA creates and affirmative duty in some circumstances to provide special, preferred treatment, or "reasonable accommodation."

190.  Facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced.

191.  Discrimination includes a defendant's failure to make reasonable accommodations to the needs of a disabled person based on his mental health.  These accommodations include specialized training of jail staff, heightened level of medical care and diligent surveillance.

192.  Defendants County of Santa Cruz, WELLPATH/CFMG and Does 1-50, failed to make reasonable accommodations to TAMARIO SMITHS's medical needs based on his physical and mental health.  County of Santa Cruz, WELLPATH/CFMG employees and Does 1-50 failed to communicate the protocol for polydipsia and hyponatremia, despite their knowledge that TAMARIO SMITH suffered from a potentially fatal condition.

193.  Defendants denied TAMARIO SMITH of the services, programs or activities including a transfer to the hospital, which is the services, programs or activities they provide.  The failure to provide critical medical information was a denial of the services program or activity based on his disability.

194.  Defendant County of Santa Cruz failed to make reasonable accommodations to TAMARIO SMITH's medical needs based on his physical and mental health needs.  Defendant failed to provide any treatment for MR. SMITH's hyponatremia.  Defendants ignored MR. SMITH's signs of obvious medical distress and left him with unfettered access to water, coffee and toxic cleaning fluids.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

43.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

195.  Defendants failed to make reasonable accommodations to TAMARIO SMITH's need to be placed in a cell without access to water, coffee and toxic cleaning chemicals.

196. Defendants failed to provide TAMARIO SMITH with any access to mental health programs and services and failed to accommodate his mental and physical disabilities.

197.  Instead of cutting off MR. SMITH's access to water and engaging in water intoxications protocols, Defendants allowed and indeed, directed and encouraged TAMARIO SMITH to drink plenty of water.

198.  There was an outright denial of services when TAMARIO SMITH was exhibiting obvious symptoms of medical distress.  This demonstrates that Defendants were discriminating against TAMARIO SMITH because of his disability.

199.  Defendants were deliberately indifferent to TAMARIO SMITH's serious medical condition.  Defendants had actual knowledge of the substantial risk of harm to TAMARIO SMITH from his serious diagnosed medical conditions of rhabdomyolysis and schizophrenia and they responded with deliberate indifference by failing to communicate or document his condition; failing to take reasonable steps to limit MR. SMITH's water, coffee and toxic chemical intake; failing to place him in a medical unit where he could be observed; and failing to provide him medical care when TAMARIO SMITH was in medical distress.

200.  The regulations promulgated by the Department of Justice to implement Part A of Title II of the ADA require each government entity to conduct a self-evaluation of its programs and services (or the lack thereof) related to persons with disabilities:

(a) A public entity shall, within one year of the effective date of this part [that is, by January 26, 1993], evaluate its current services, policies, and practices, and the effects thereof, that do not or may not meet the requirements of this part and, to the extent modification of any such services, policies, and practices is required, the public entity shall proceed to make the necessary modifications.
(b) A public entity shall provide an opportunity to interested persons, including individuals with disabilities or organizations representing individuals with disabilities, to participate in the self-evaluation process by submitting comments.

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

201.  Defendants failed to conduct any self-evaluation of procedures and training for its personnel about how to handle encounters with persons who have mental illness or another disability.

202.  Plaintiffs are entitled to declaratory judgment concerning Defendants' failure to conduct a self-evaluation plan under the Rehabilitation Act and the Americans with Disabilities Act and injunctive relief, requiring it to modify its programs and services to accommodate person with disabilities.

203.  Defendants violated TAMARIO SMITH's clearly established rights under the ADA with deliberate indifference.

204.  The violation of TAMARIO SMITH's rights resulted from a municipal policy or custom adopted or maintained with deliberate indifference.

205.  Plaintiff is entitled to injunctive and declarative relief.

**TWELVTH CAUSE OF ACTION**
**(Violation of the Rehabilitation Act 29 U.S.C. §794(a))**
**All Plaintiffs against County of Santa Cruz, Doe Defendants 1-50**

206.  Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

207.  The Rehabilitation Act of 1973 ("Section 504") states in pertinent part, provides that, "No otherwise qualified individual with a disability in the United States shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. §794(a).

208.  Defendant County of Santa Cruz, Does 1-50 are programs that receive federal financial assistance as defined in 29 U.S.C. §794(b).

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

209.  TAMARIO SMITH was a "qualified individual with a disability" under the Rehabilitation Act.

210.  Defendants violated the rehabilitation Act by failing to make reasonable accommodations to the needs of TAMARIO SMITH, a disabled person.

211.  Defendants were deliberately indifferent to TAMARIO SMITH's serious medical condition.

212.  Instead of providing TAMARIO SMITH with adequate medical services and fair treatment, Defendants refused to provide him with medical and psychiatric care as his condition deteriorated and MR. SMITH was dying of water intoxication.

213.  Defendants had actual knowledge of the substantial risk of harm to TAMARIO SMITH's from his serious, diagnosed condition and they responded with deliberate indifference by failing to communicate or document his condition; failing to take reasonable steps to limit TAMARIOS's water and coffee consumption and completely restrict his access and intake of toxic chemicals; failing to place him in a medical unit where he could be observed; and failing to provide him medical care when TAMARIO SMITH was in medical distress.

214.  Defendants violated the Rehabilitation Act by failing to conduct any self-evaluation of procedures and training for its personnel about how to handle communications with jails regarding patients who have mental illness or another disability, including polydipsia.

215.  As a direct and proximate result of the Defendants' conduct as described herein, TAMARIO SMITH suffered in the amount to be determined at the time of trial.

216.  Plaintiff is entitled to injunctive and declarative relief.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief against each and every Defendant herein, jointly and severally.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

1.     Declaratory relief, finding that Defendants violated Plaintiffs' and Decedent's rights, to serve the purpose of 42 U.S.C. §1983, 42 U.S.C. §12132, including for vindication of those rights as "Private Attorneys' General," elucidation of those rights for the courts, the public, and government officials, and to deter similar wrongdoing by the Defendants and other officials;

2.     Compensatory damages in an amount according to proof, which is fair, just and reasonable;

3.     Punitive damages under 42 U.S.C §1983, federal law, and California law, in an amount according to proof and which is fair, just, and reasonable against all Defendants except the municipal Defendants;

4.     All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§1983 and 1988; California Code of Civil Procedure §§377.20 et sq., 377.60 et seq., and 102.5; and as otherwise may be allowed by California and/or federal law;

5.     For such other and further relief as the Court deems just and proper.

## JURY DEMAND

PLAINTIFFS hereby demands a jury trial in this action.

Dated: January 15, 2021

*Elizabeth Caballero*
_____
Elizabeth M. Caballero
Jonathan Che Gettleman
CABALLERO & GETTLEMAN, INC.
Attorneys for Plaintiffs, FELICIA SMITH and
MICHAEL    WARREN-SMITH,  and  Decedent,
TAMARIO SMITH

LAW OFFICES
223 RIVER STREET
SUITE D
SANTA CRUZ, CA
95060

47.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES