Elizabeth M. Caballero, SBN 240249
Jonathan Che Gettleman, SBN 243560
**CABALLERO & GETTLEMAN**
**LAW OFFICE, INC.**
223 River Street, Suite D
Santa Cruz, California 95060
TELEPHONE: 831-427-2658
FACSIMILE: 831-515-5228
EMAIL: *cglaw2015@gmail.com*

*Attorneys for Plaintiffs,*
*Tamario Smith (deceased), Felicia Smith,*
*Michael Warren-Smith*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| TAMARIO SMITH, DECEASED, through his Co-Successors-in-Interest FELICIA SMITH, individually and MICHAEL WARREN-SMITH, individually,<br><br>Plaintiffs,<br>vs.<br><br>CALIFORNIA FORENSIC MEDICAL GROUP, INC.; WELLPATH, INC.; WELLPATH, LLC; WELLPATH MANAGEMENT INC.,<br><br>Defendants. | Case No. 5:21-cv-00421-EJD<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 2 TO ADMIT EVIDENCE THAT DEFENDANTS CALIFORNIA FORENSIC MEDICAL GROUP ("CFMG") AND WELLPATH OPERATE AS A SINGLE ENTERPRISE AND THAT WELLPATH CONTROLS AND EXTRACTS CFMG'S REVENUE (PUNITIVE DAMAGES)**<br><br>Final Pretrial Conference: June 25, 2026<br>Time: 10:00 a.m.<br>Courtroom: 4, 5th Floor<br>Judge: Hon. Edward J. Davila<br><br>Trial Date: July 20, 2026 |

## I. INTRODUCTION

This Court has already decided the central question. On March 15, 2024, on the parties' stipulation, the Court ordered that, "for the purposes of this lawsuit, the Defendant Parties CFMG and Wellpath are for all intents and purposes the same entity … such that no distinction shall be drawn between CFMG and Wellpath, LLC." (ECF 156; Declaration of Jonathan Gettleman, Esq., in support of Plaintiffs' Motion in Limine No. 2 ("Gettleman Decl.,") Ex. A, ECF 156 Order by Honorable Edward J. Davila.) Defendants proposed that stipulation, signed it, and are bound by it. CFMG and Wellpath are one. The only question this motion presents is the consequence of that ruling at the punitive-damages phase: because the two are a single entity, every dollar Wellpath strips out of CFMG is the CFMG's own money, and the jury must be allowed to count it as CFMG's financial condition and ability to pay.

Plaintiffs accordingly move for an order permitting them, at the punitive-damages phase, to present evidence that the single CFMG/Wellpath enterprise's true financial condition includes the revenue Wellpath extracts from CFMG, and that CFMG's apparent inability to pay is not a real financial condition but an artifact engineered by that extraction. CFMG collects roughly $300 million a year from thirty-four California counties, yet reports a loss and pays no income tax, because Wellpath — which owns 100% of CFMG — strips that revenue through an 18% management fee, tens of millions more in intercompany charges, and, since 2023, a sale of CFMG's receivables to a Wellpath entity. The proof is Defendants' own tax returns as reflected by the sworn testimony of Wellpath's Vice President of Tax, Blair Lukasik, CFMG's Rule 30(b)(6) designee ("Lukasik Dep."), the 2012 Management Services Agreement ("MSA"), the 2023 Receivables Sale Agreement ("RPA"). (Gettleman Decl., Exs. B–D.)

This manufactured separateness is itself a fraud, and it serves two ends. First, it lets the larger enterprise hold CFMG out to California Counties as a stand-alone, physician-owned California corporation — the fiction California Business and Professions Code § 2400 demands by barring the

corporate practice of medicine — so the enterprise can win lucrative public corrections-health contracts. Second, Wellpath drains CFMG of every dollar of profit so that the entity the counties actually contract with appears penniless and judgment-proof while giving it all to a larger corporation that controls CFMG 100%. CFMG is not a physician-owned, stand-alone company, and its own documents disprove the façade. Defendants should not be permitted to perpetrate that fiction on the jury and the deliberate construction of a judgment-proof shell to escape accountability for the deaths it causes is, in and of itself, an independent basis for punitive damages.

## II. RELEVANT BACKGROUND

Tamario Smith, a twenty-one-year-old man with schizophrenia, died of hyponatremia on May 10, 2020, in the Santa Cruz Main Jail, where Defendant CFMG was the contractually designated responsible health authority. Plaintiffs' operative claims include § 1983 Monell liability and ADA Title II, and Plaintiffs seek punitive damages against the private corporate defendants for conduct in reckless or callous disregard of Tamario's federal rights.

In practice — and as the Court's single-entity order recognizes — CFMG's operations, finances, personnel, billing, insurance, and cash flow are controlled by Wellpath under the December 31, 2012 Management Services Agreement, signed by a single individual (Dan Hustedt) as CEO of both CFMG and the Management Company. (Gettleman Decl., Ex. C, MSA; Ex. D, RPA.) The MSA sets an 18% management fee on CFMG's "Adjusted Gross Revenues," lets Wellpath approve all physician compensation and sweep CFMG's accounts, and Wellpath Holdings, Inc. owns 100% of CFMG — one of twenty-seven entities in a $2.01 billion consolidated federal return. (Gettleman Decl., Ex B, Lukasik Dep. 82:23, 115:14; Ex. C, MSA; Ex. D, RPA.)

CFMG's own Rule 30(b)(6) witness is not a CFMG employee but Wellpath's Vice President of Tax. (Gettleman Decl., Ex. B, Lukasik Dep. 22:6–12.) She confirmed that CFMG has "no separate audited

or compiled financial statements," "no separate accounting books," and a ledger "for the entire group," that CFMG files no return of its own, and that although it is a for profit corporation, it "hasn't made profit." (Id. 27:19–28:11; 61:14–24; 93:13–15; 100:17–20.)

CFMG's tax returns show the extraction in Defendants' own numbers, each confirmed by Lukasik. CFMG took in over $235 million every year from 2022 through 2024, yet reported a loss each year and paid no federal income tax, after "management fees" to Wellpath of $52,565,863 (2022), $35,274,545 (FY2023), and $63,864,814 (2024). (Id. at 53:25-54:2; 128:3-9; 115:16-116:4.) The fee is only part of the extraction. In 2024 alone, on top of the $63.9 million management fee, CFMG's intercompany payables to its corporate family grew from $29,051,452 to $104,039,398 — a roughly $75 million increase in a single year — while its book retained-earnings deficit deepened by about $91 million. (Gettleman Decl. Ex. B, Lukasik Dep. 162:19-168:5.) Public money flows in, intercompany extractions flow out, and CFMG is left looking like a company that loses money, all by sophisticated corporate accounting design.

On September 27, 2023 — while this action was pending — CFMG executed the RPA, selling its right to collect every county payment, past and future, to Perimeter Hill RPA, LLC, an entity at Wellpath's own address, with Wellpath as servicer. County payments are now deposited into a collection account in the name of a Wellpath affiliate (Katsumi Servicing, LLC); a financier (KARS Funding, LLC) and Wellpath take their distributions first; and CFMG receives only the residual. The transfer was perfected by UCC Financing Statement No. U230069619429, filed with the California Secretary of State on September 28, 2023. (Gettleman Decl., Ex. D, RPA.)

## III. ARGUMENT

### A. The Court has already ruled that CFMG and Wellpath are a single entity, and Defendants are bound by that order.

As established above, the Court has ordered — on the parties' stipulation — that CFMG and Wellpath are a single entity for all purposes of this lawsuit, with no distinction to be drawn between them. (ECF 156; Gettleman Decl, Ex. A, ECF 156.) That order is the law of the case and binds Defendants, who proposed and signed it; they cannot now draw the very distinction the order forbids by presenting CFMG as a separate, impoverished company or by treating Wellpath's finances as a stranger's. California's alter-ego and single-enterprise doctrines independently compel the same result, *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 538–39 (2000), but the Court need not revisit what it has already decided.

**B. A defendant's financial condition is admissible at the punitive-damages phase, and the single entity's wealth includes the money Wellpath strips from CFMG.**

Punitive damages lie against private corporate actors under 42 U.S.C. § 1983 for conduct in reckless or callous disregard of federal rights, and entities like CFMG/Wellpath enjoy no immunity. *Smith v. Wade*, 461 U.S. 30, 56 (1983); see *Estate of Hill v. Naphcare*, Inc. 2025 WL 1588738, *4 (9th Cir. 2025). In assessing punitive damages, "plaintiffs bear the burden of proving that punitive damages should be awarded and, if so, the amount of any such damages." (Ninth Circuit Manual of Model Civil Jury Instructions No. 5.5.) Because CFMG and Wellpath are one entity by court order, the defendant's financial condition is the enterprise's, and the revenue Wellpath strips from CFMG — detailed above — is the single entity's own money, attributable to CFMG for purposes of ability to pay. The jury cannot assess the actual amount of punitive damages necessary to fulfill the goal of punitive damages if CFMG is permitted to present its engineered standalone losses as the whole picture.

The same evidence is independently probative of malice and reprehensibility. The deliberate design of a judgment-proof shell — structuring the enterprise [CFMG] so that the entity that contracts to provide, and fails to provide, constitutionally required medical care holds no assets to answer for the

deaths it causes, while its 100% controller siphons the revenue — is itself conduct the jury may weigh in deciding both entitlement to and the amount of punitive damages.

**C. The tax returns, the MSA, the RPA, and the Rule 30(b)(6) testimony are independently admissible.**

Each document is admissible. The MSA and RPA are Defendants' own contracts, the tax returns are CFMG's own filings, and Lukasik testified as CFMG's corporate representative — all opposing-party statements under Federal Rule of Evidence 801(d)(2), and business records under Rule 803(6). The MSA was publicly filed by Wellpath in the bankruptcy court, and the RPA was filed with the California Secretary of State. The Court may permit a Fed. R. Evid. 1006 summary of the voluminous returns. Fed. R. Evid. 403 poses no bar: the probative value at the punitive phase is high, and any risk of confusion is minimized by presenting the evidence in the bifurcated punitive proceeding.

**D. Defendants' anticipated objections do not withstand scrutiny, and the Wellpath bankruptcy does not change the analysis.**

Defendants' discovery position — that only CFMG's "current financial condition" matters and that parent and affiliate finances are off-limits — is foreclosed by ECF 156 and backwards on the merits: the extraction is the direct explanation for the very numbers Defendants will use to plead poverty, and they cannot invoke a structure built to look judgment-proof to hide it from the jury. Nor does the Wellpath bankruptcy change anything. The Bankruptcy Court expressly excluded CFMG from the Wellpath debtors' bankruptcy protection; CFMG is not a debtor, enjoys no discharge or injunction, and the automatic stay has been lifted as to this action. (Gettleman Decl., Ex. E, CFMG discharge from Bankruptcy.) This motion therefore neither affects the bankruptcy orders nor draws CFMG into the bankruptcy: Plaintiffs do not seek to hold Wellpath liable or to make it pay any judgment; they ask only that the jury consider the revenue Wellpath strips from CFMG's public contracts as part of the non-debtor

CFMG's own financial condition — an evidentiary matter against CFMG that leaves the bankruptcy estate and its orders untouched.

## IV. CONCLUSION

The Court has already ordered, on Defendants' own stipulation, that CFMG and Wellpath are one entity, with no distinction to be drawn between them. Defendants must be held to that agreement. The money Wellpath strips from CFMG is therefore CFMG's own, and the jury is entitled to consider it — along with the deliberate construction of a judgment-proof shell — in assessing punitive damages. The Court should enforce its order, hold Defendants to their stipulation, and grant the motion.

## V. REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter an order in limine directing as follows:

1. Consistent with the Court's order that CFMG and Wellpath are a single entity (Dkt. 156), Plaintiffs may introduce, at the punitive-damages phase, evidence and argument that Wellpath controls and extracts CFMG's revenue and that the amounts Wellpath extracts are attributable to CFMG's financial condition and ability to pay and may be considered by the jury.

2. Plaintiffs may introduce CFMG's tax returns (2022 through fiscal year 2024), the CCS-CMGC consolidated federal return, the 2012 Management Services Agreement, the 2023 Receivables Sale Agreement, and the deposition testimony of CFMG's Rule 30(b)(6) designee Blair Lukasik — with Rule 1006 summaries — as evidence of the enterprise's financial condition and ability to pay. (Gettleman Decl., Exs. B-E.)

3. Defendants shall abide by the Court's order and their own stipulation (ECF 156) and shall not argue, suggest, or imply — contrary to that order and to their own Rule 30(b)(6) witness — that CFMG is a standalone or separate entity unable to satisfy a judgment, or that CFMG's tax-return losses reflect its

true financial condition, without thereby opening the door to the full single-enterprise and revenue-extraction evidence described above.

4. Defendants shall not object, in the presence of the jury, to the single-enterprise or financial-condition evidence on relevance or corporate-separateness grounds; any such objection shall be raised outside the jury's presence.

5. Nothing in this order precludes Defendants from introducing otherwise admissible evidence of CFMG's actual financial condition, provided that the complete single-enterprise and revenue-extraction picture is also admitted.

6. Defense counsel shall instruct all witnesses, experts, and trial-team personnel of this order in advance of trial. This evidence shall be presented in the punitive-damages phase consistent with any order bifurcating trial. Violations shall be addressed by curative instruction, sanction, or mistrial under Federal Rule of Civil Procedure 61.

Dated: June 4, 2026 **CABALLERO & GETTLEMAN LAW OFFICE, INC.**

By: Jonathan Gettleman
JONATHAN GETTLEMAN
ELIZABETH CABALLERO
Attorneys for Plaintiffs