Elizabeth M. Caballero, SBN 240249
Jonathan Che Gettleman, SBN 243560
**CABALLERO & GETTLEMAN LAW OFFICE, INC.**
223 River Street, Suite D
Santa Cruz, California 95060
TELEPHONE: 831-427-2658
FACSIMILE: 831-515-5228
EMAIL: *cglaw2015@gmail.com*

*Attorneys for Plaintiffs,*
*Tamario Smith (deceased),*
*Felicia Smith,*
*Michael Warren-Smith*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| TAMARIO SMITH, DECEASED, through his Co-Successors-in-Interest FELICIA SMITH, individually and MICHAEL WARREN-SMITH, individually,<br><br>Plaintiffs,<br>vs.<br><br>CALIFORNIA FORENSIC MEDICAL GROUP, INC.; WELLPATH, INC.; WELLPATH, LLC; WELLPATH MANAGEMENT INC.,<br>Defendants. | Case No. 5:21-cv-00421-EJD<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 7 TO EXCLUDE EVIDENCE OF DECEDENT TAMARIO SMITH'S PRE-INCARCERATION DRUG USE**<br>Fed.R.Evid 401, 402, 403, 404<br><br>Final Pretrial Conference: June 25, 2026<br>Time: 10:00 a.m.<br>Courtroom: 4, 5th Floor<br>Judge: Hon. Edward J. Davila<br>Trial Date: July 20, 2026 |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This is a civil rights and disability-discrimination action arising out of the in-custody death of Tamario Smith, a 21-year-old man with schizophrenia who had been adjudicated incompetent to stand trial under California Penal Code § 1370 and who died at the Santa Cruz County Main Jail on May 10, 2020. The cause of death was a cardiac arrest precipitated by electrolyte imbalance.

The sole Defendant remaining for trial is the contracted jail medical provider, CFMG/Wellpath. Plaintiffs' claims are confined to 14th Amendment due process violations resulting in the deprivation of plaintiffs' right of association and *Monell* liability under 42 U.S.C. § 1983 for inadequate medical care vis-à-vis Defendant's unconstitutional customs, including collective inaction, failure to monitor, failure to communicate and failure to train, see *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and (ii) discrimination under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*

Plaintiffs respectfully move to exclude any reference at trial — by evidence, argument, examination, or insinuation — to Smith's pre-incarceration use of any controlled substance, illegal drug, or alcohol. The Ninth Circuit has held that such evidence has "marginal, if any, probative value as to damages, and none as to liability" in a § 1983 civil-rights action. *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 603 (9th Cir. 2016). The narrow exception recognized in *Boyd v. City and County of San Francisco*, 576 F.3d 938, 943–44 (9th Cir. 2009) — admission where pre-incident drug use is relevant to a defendant's *contemporaneous* perception in an excessive-force case — has no application here. The evidence is irrelevant under Federal Rules of Evidence 401 and 402, substantially more prejudicial than probative under Rule 403, and impermissible character/propensity evidence under Rule 404.

## II. RELEVANT FACTUAL BACKGROUND

Smith was booked into the Santa Cruz County Main Jail on January 14, 2020, was released and then remanded to custody pursuant to a bench warrant on January 30, 2020, and remained continuously in CFMG/Wellpath's custodial medical care for approximately 101 days until his death on May 10, 2020. The criminal court found him incompetent to stand trial on March 26, 2020, and he was housed in the jail's mental-health unit (M-Unit) beginning April 8, 2020.

The medical mechanism of death was established by the coroner as cardiac arrest due to low blood- sodium (hyponatremia) from overconsumption of water and coffee. (Declaration of Jonathan

Gettleman ("Gettleman Decl.," Ex. A, Deposition of Dr. Stephany Fiore, MD ("Fiore Dep.") 89:13–18.) Plaintiffs expert, Dr. Ramsamooj, MD, opined that Mr. Smith's hyponatremia was caused by chronic medication-induced SIADH — a pharmacologic effect of olanzapine and risperidone, compounded by benztropine's anticholinergic suppression of thirst regulation — combined with sustained excessive water intake. The triggering medications were administered in custody. Defendant has an alternative theory that Plaintiff choked to death while vomiting.

No expert disclosed in this case has opined that any pre-incarceration use of any controlled substance by Smith contributed to the mechanism of death, to his medication regimen, to his life expectancy, or to his future earning capacity.

## III. LEGAL STANDARD

Rule 401 deems evidence relevant only if it "has any tendency to make a fact more or less probable" and the fact is "of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403; see *Old Chief v. United States*, 519 U.S. 172, 180–81 (1997). Rule 403 rulings are reviewed for abuse of discretion and with "considerable deference." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000).

Rule 404(a)(1) forbids using evidence of a person's "character or character trait" "to prove that on a particular occasion the person acted in accordance with the character or trait." The Ninth Circuit, sitting en banc, has reaffirmed that Rule 404 renders inadmissible evidence of a person's general character if used to show propensity or proclivity. *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc).

//

## IV. ARGUMENT

### A. *Pre-Incarceration Drug Use Has No Tendency to Make Any Fact of Consequence More or Less Probable.*

The disputed issues at trial are (1) whether CFMG/Wellpath maintained unconstitutional customs and failed to train its personnel in the management of seriously mentally ill prisoners receiving psychotropic medications; (2) whether CFMG/Wellpath discriminated against Smith by reason of his psychiatric disability; and (3) the resulting harm. Smith's pre-jail substance history is logically unconnected to each.

The Ninth Circuit's decision in *Estate of Diaz, supa,* is directly on point. There, the panel reversed a defense verdict in a § 1983 wrongful-death action because the district court allowed inflammatory "evidence about the victim" — including drug-use evidence — that "had little, and in large part no, relevance to the liability issue." 840 F.3d at 603. The Court directed that on remand the district court should "closely review" such evidence "under Federal Rules of Evidence 401 and 403," because "the evidence of Diaz's drug use and gang affiliation has marginal, if any, probative value as to damages, and none as to liability." *Id.* at 603. That guidance controls here.

Deliberate-indifference and *Monell* liability turn on the institutional defendant's policies, customs, and training, not on any individual provider's contemporaneous perception of Smith's pre-jail history. See *Monell*, 436 U.S. at 694. No CFMG/Wellpath provider has testified that any pre-jail substance reference informed any clinical decision, and Defendant has not identified one. Moreover, Plaintiff died 101 days into his custodial detention with no evidence of using an illegal substances while incarcerated.

Plaintiffs' disability-discrimination claims under Title II of the ADA lends no relevance hook either. Smith's protected status rests on his schizophrenia, which Defendant does not dispute. The statutory exclusion for "any individual who is currently engaging in the illegal use of drugs," 42 U.S.C. § 12210(a);

see also 29 U.S.C. § 705(20)(C)(i), is by its terms confined to *current* use, and § 12210(b)(1)–(2) expressly preserves protected status for an individual who has "successfully completed a supervised drug rehabilitation program" or "is no longer engaging in such use." Pre-incarceration substance history therefore does not negate Smith's qualifying disability.

As to damages, *Estate of Diaz* again controls: drug-use evidence has "marginal, if any, probative value" on that issue. 840 F.3d at 603. CFMG/Wellpath has disclosed no expert opining that any pre-incarceration substance use shortened Smith's life expectancy or reduced his earning capacity, and there is no record connection between the proffered evidence and any damages issue.

### *B. Even if Marginally Relevant, the Evidence Is Substantially More Prejudicial Than Probative.*

Fed.R.Evid. 403 directs the Court to weigh probative value against the risk of unfair prejudice — the risk that the jury will decide on an improper basis. *Old Chief*, 519 U.S. at 180. The imbalance here is severe. On the probative side, as shown above, there is nothing properly tied to any disputed issue. On the prejudice side, evidence that a young decedent had previously used drugs invites the jury to (i) discount the moral worth of his life; (ii) treat him as the author of his own demise notwithstanding the in-custody mechanism of injury and a clear mental health record; and (iii) excuse failures of medical care on the implicit theory that "this kind of person" was destined for a bad outcome regardless.

The Ninth Circuit's analysis in *Estate of Diaz, supra,* addressed this danger directly. The panel emphasized that "graphic and prejudicial evidence about the victim" in a § 1983 case requires close review under Rules 401 and 403 to ensure jurors are not invited to view the decedent in an unfavorable light untethered to the issues. 840 F.3d at 603–05. The risk is heightened where, as here, the decedent cannot testify or contextualize his history because he is deceased.

//

//

***C. The Evidence Is Inadmissible Character or Propensity Evidence Under Rule 404.***

Defendant's only plausible use of pre-incarceration drug-use evidence is the propensity inference — that Smith was the kind of person whose conduct (claimed water intake, refusing care, non-compliance) explains the death and absolves CFMG/Wellpath. That is the inference Rule 404 forbids. *Curtin*, 489 F.3d at 944. The Rule 404(b)(2) carve-out for non-character purposes — "motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake" — does not apply: Defendant has identified no such non-propensity purpose, because none exists. The evidence is offered, if at all, only to color the decedent.

***D. The Order Sought Is Appropriately Narrow.***

Plaintiffs do not seek to exclude legitimate medical history that CFMG/Wellpath's in-custody providers actually relied upon in real-time clinical decision-making. To the extent CFMG/Wellpath can show that a specific provider documented contemporaneous reliance on a particular pre-incarceration substance reference in differential diagnosis or treatment planning, Plaintiffs request only that any such proffer be raised at sidebar so the Court can apply Rules 401, 403, and 404 in context.

## V. CONCLUSION

For the foregoing reasons, and consistent with *Estate of Diaz v. City of Anaheim*, *supra*, Plaintiffs respectfully request that the Court grant this motion and exclude evidence of Tamario Smith's pre-incarceration use of controlled substances, illegal drugs, or alcohol, absent a prior showing at sidebar that the specific reference satisfies Rules 401, 403, and 404.

Dated: June 4, 2026 **CABALLERO & GETTLEMAN LAW OFFICE, INC.**

By: *Jonathan Gettleman*
JONATHAN GETTLEMAN
ELIZABETH CABALLERO
Attorneys for Plaintiffs