Elizabeth M. Caballero, SBN 240249
Jonathan Che Gettleman, SBN 243560
**CABALLERO & GETTLEMAN**
**LAW OFFICE, INC.**
223 River Street, Suite D
Santa Cruz, California 95060
TELEPHONE: 831-427-2658
FACSIMILE: 831-515-5228
EMAIL: *cglaw2015@gmail.com*

*Attorneys for Plaintiffs,*
*Tamario Smith (deceased), Felicia Smith,*
*Michael Warren-Smith*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| TAMARIO SMITH, DECEASED, through his Co-Successors-in-Interest FELICIA SMITH, individually and MICHAEL WARREN-SMITH, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>CALIFORNIA FORENSIC MEDICAL GROUP, LLC, a corporation and WELLPATH, LLC a corporation;<br>Defendants. | Case No. 5:21-cv-00421-EJD<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 10 TO PRECLUDE "REVERSE GOLDEN RULE" ARGUMENT AND ANY INVITATION TO JURY EMPATHY WITH DEFENDANTS' INSTITUTIONALPOSITION**<br><br>Final Pretrial Conference: June 25, 2026<br>Time: 10:00 a.m.<br>Courtroom: 4, 5th Floor<br>Judge: Hon. Edward J. Davila<br>Trial Date: July 20, 2026 |

## I. INTRODUCTION

Civil-rights verdicts must rest on the constitutional standard and the trial evidence — not on jurors' sympathy for the institutional defendant tasked with running a correctional medical operation. Plaintiffs anticipate that defendants California Forensic Medical Group, Inc. and Wellpath LLC (together, " CFMG/ Wellpath") will, through counsel, witness, expert, opening, or closing, invite the jury to put itself in CFMG/Wellpath’s shoes — to imagine how hard it is to provide health care in a county jail, to consider how a plaintiffs’ verdict would affect a private correctional contractor's ability to do this work, or to acquit on the basis of empathy for the

operational difficulties of correctional health. That is the so-called "reverse Golden Rule": the mirror image of the prohibition against asking jurors to award damages as though the injury had happened to them. The prohibition runs both ways, and courts have universally condemned both forms because each asks the jury to decide on emotion rather than evidence. *Lovett v. Union Pacific R.R. Co.*, 201 F.3d 1074, 1083. Plaintiffs respectfully request an order precluding any such argument, in any form, by counsel, witnesses, or experts.

## II. RELEVANT BACKGROUND

Tamario Smith was twenty-one, schizophrenic, adjudged incompetent to stand trial on March 26, 2020. He died on May 10, 2020, in the M-Unit of the Santa Cruz Main Jail. The Coroner determined cause of death as sudden cardiac arrest from electrolyte imbalance from excessive water and coffee consumption and testified the death "would have been preventable" had Smith's sodium been monitored. CFMG/Wellpath was the contractually designated responsible health authority at the jail during the relevant period. Plaintiffs' Monell, ADA, and Rehabilitation Act theories arise from layered duties imposed by the Independent Contractor Agreement, its Amendment, and the Memorandum of Understanding (MOU), the CFMG/Wellpath Policies, and incorporated NCCHC standards.

Defendants are expected to argue not the documented facts of the care Tamario received, but the difficulty of providing correctional health care in general: the staffing burdens of a jail health program, the volume of inmate encounters, the complexity of mental-health coordination, the limited budget, and a range of "we did our best in a hard environment" themes designed to invite jury sympathy for the institutional defendant. Plaintiffs further anticipate questions of jurors in voir dire and argument such as: "If you were running a jail medical program, would you

understand the challenges?" or, "Think about what it's like to have to provide care to a population like this." Such arguments are improper.

**III. ARGUMENT**

**A. The Golden Rule prohibition runs in both directions.**

The "Golden Rule" argument asks jurors to render a verdict by imagining themselves in the position of a party rather than by applying the law to the evidence. It is improper because it substitutes personal empathy or self-interest for the jury's constitutional and statutory duty. Federal courts have “universally condemned” it. *Lovett,* 201 F.3d at 1083. The prohibition is not unilateral — it applies equally when defendants invite jurors to identify with the defendant. *Id*. (Improper for defense closing to refer to "the jurors as defendants"; reverse Golden Rule "universally condemned"). The Third Circuit in a civil-rights case has held the rule expressly: the prohibition applies "with equal force" to defense Golden Rule arguments directed at liability, not merely damages. *Edwards v. City of Philadelphia*, 860 F.2d 568, 574 (3d Cir. 1988). The D.C. Circuit reaffirmed and applied that holding in another civil-rights case, reversing for defense Golden Rule argument as to liability. *Caudle v. District of Columbia*, 707 F.3d 354, 360–61 (D.C. Cir. 2013). California law is to the same effect. *Beagle v. Vasold*, 65 Cal. 2d 166, 182 n.11 (1966).

Although the Ninth Circuit has not addressed the "reverse Golden Rule" in a published civil opinion, it has long recognized the closely related principle that arguments asking the jury to decide for "reasons wholly irrelevant" to the merits are improper and require new-trial scrutiny. *United States v. Sanchez*, 659 F.3d 1252, 1256–58 (9th Cir. 2011). The standard for granting a new trial based on improper attorney argument is that the misconduct "sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice." *Settlegoode v. Portland Public Schools*, 371 F.3d 503, 516-517 (9th Cir. 2004). Where, as here,

the very *purpose* of the argument is to channel passion or sympathy, that standard is met at the first improper question, and the prophylactic course is preclusion in limine rather than a new trial on appeal.

**B. The prohibition applies with particular force to a civil-rights institutional defendant.**

A §1983 / Monell action puts the constitutional adequacy of an institutional defendant's policies, customs, and training squarely before the jury. The jury's task is to assess institutional conduct against an objective constitutional standard — not against the difficulty of the work or against the jury's personal sympathies. *Edwards, supra,* and *Caudle, supra* addressed precisely that posture. In *Edwards*, an excessive-force case, the Third Circuit reversed where defense counsel in opening asked the jury to imagine "what they would have done in a similar situation," and held that the Golden Rule prohibition "applies with equal force to defendants' arguments on liability as it does to plaintiffs' arguments on damages." 860 F.2d at 574. *Caudle* — a civil-rights retaliation case against the District of Columbia — extended the holding to argument that invited jurors to "step into the shoes" of the institutional defendant. 707 F.3d at 360–61. The principle is straightforward: a defense verdict procured by inviting jurors to empathize with an institutional defendant's operational difficulties is a verdict procured by appeal to sympathy, not by assessment of constitutional adequacy.

Federal Rule of Evidence 403 supplies the same result. Argument or evidence designed to elicit a verdict based on jurors' identification with the defendant's operational circumstances has minimal probative value — the constitutional standard does not turn on whether the work was difficult — and substantial prejudicial weight, because the jury is invited to substitute sympathy for analysis. Such material is properly excluded under Rule 403. *Old Chief v. United States*, 519

U.S. 172, 180 (1997) ("unfair prejudice" means the tendency to suggest decision on "an improper basis"). Federal Rule of Evidence 611(a) independently empowers the Court to control the "mode and order of examining witnesses and presenting evidence" to "avoid wasting time" and to protect against improper argument. Preclusion in limine of foreseeable improper-empathy argument is precisely the kind of trial-management order Rule 611(a) contemplates.

## IV. CONCLUSION

The Golden Rule prohibition is universal. It applies equally to defendants. And it applies with particular force in a civil-rights case where the very theory of liability is the constitutional adequacy of an institutional defendant's policies, customs, and training. Plaintiffs respectfully request that the Court enter an order precluding CFMG/Wellpath from inviting the jury to identify with the institutional defendant or to render a verdict based on sympathy for its operational circumstances.

## V. REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter an order in limine directing as follows:

1. Counsel for Defendants California Forensic Medical Group, Inc. and Wellpath LLC (collectively, "CFMG/Wellpath") shall not — in opening statement, voir dire, direct examination, cross-examination, redirect, closing argument, rebuttal, or by any other mode — argue, suggest, insinuate, elicit, invite, or imply that the jury should place itself in Wellpath/CFMG's position; consider what the jurors would do if they were responsible for providing health care in a county jail; or render any finding on the basis of empathy or sympathy for Wellpath/CFMG's operational position.

2. CFMG/Wellpath's lay witnesses, retained experts, and any other person testifying on CFMG/Wellpath's behalf shall not offer testimony — on direct, cross, or redirect — that invites jury identification with CFMG/Wellpath; describes the operational difficulties, staffing constraints, budgetary limitations, or institutional challenges of correctional health care in general terms (as distinct from documented conduct toward Tamario Smith); or characterizes CFMG/Wellpath's conduct as "best efforts," "hard," "difficult," "impossible," or any similar framing untethered to documented facts about Tamario Smith's care.

3. Counsel and witnesses for CFMG/Wellpath shall not argue, suggest, or elicit testimony concerning the financial, reputational, operational, or other consequences that a plaintiff's verdict would have on CFMG/Wellpath, its employees, its parent or affiliated entities, or the correctional health care industry generally; nor concerning the impact of a plaintiff's verdict on CFMG/Wellpath's ability to continue providing correctional health care services.

4. Counsel shall not pose voir-dire questions or trial questions of the form: "If you were running a jail medical program, would you understand the challenges?"; "Think about what it's like to have to provide care to a population like this"; or any substantially similar question designed to elicit juror identification with the institutional defendant rather than assessment of the defendant's conduct.

5. This order does not preclude Defendants from introducing the documented facts of CFMG/Wellpath's actual conduct toward Tamario Smith; the contractually identified scope of their duties; the staffing actually deployed at the Santa Cruz County Jail during the relevant period; the specific records that were created (or not); or the testimony of any witness with personal knowledge of what occurred.

6. Defense counsel shall instruct all witnesses, experts, and trial-team personnel of this order in advance of trial. Any violation shall be addressed by curative instruction, sanction, and — if warranted — mistrial under Federal Rule of Civil Procedure 61 and the Court's inherent authority.

Dated: June 4, 2026 **CABALLERO & GETTLEMAN LAW OFFICE, INC.**

By: Jonathan Gettleman
JONATHAN GETTLEMAN
ELIZABETH CABALLERO
Attorneys for Plaintiff