Elizabeth M. Caballero, SBN 240249
Jonathan Che Gettleman, SBN 243560
**CABALLERO & GETTLEMAN**
**LAW OFFICE, INC.**
223 River Street, Suite D
Santa Cruz, California 95060
TELEPHONE: 831-427-2658
FACSIMILE: 831-515-5228
EMAIL*: cglaw2015@gmail.com*

*Attorneys for Plaintiffs,*
*Tamario Smith (deceased), Felicia Smith,*
*Michael Warren-Smith*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| TAMARIO SMITH, DECEASED, through his Co-Successors-in-Interest FELICIA SMITH, individually and MICHAEL WARREN-SMITH, individually,<br><br>Plaintiffs,<br>vs.<br><br>CALIFORNIA FORENSIC MEDICAL GROUP, INC.; WELLPATH, INC.; WELLPATH, LLC; WELLPATH MANAGEMENT INC.,<br><br>Defendants. | Case No. 5:21-cv-00421-EJD<br><br>**JOINT PROPOSED JURY INSTRUCTIONS (AGREED AND DISPUTED INSTRUCTIONS)**<br>**(Fed. R. Civ. P. 51; Standing Order § IV.D.8)**<br><br>Final Pretrial Conference: June 25, 2026<br>Time: 10:00 a.m.<br>Courtroom: 4, 5th Floor<br>Judge: Hon. Edward J. Davila<br><br>Trial Date: July 20, 2026 |

## JOINT JURY INSTRUCTIONS — INDEX

## TABLE OF CONTENTS

**Joint Instructions (Chart 1)**

1. Duty of Jury (End of Case) .......... 7
2. Duty to Deliberate .......... 8
3. Claims and Defenses .......... 9
4. Corporate Party .......... 10
5. Section 1983 Claim — Introductory Instruction .......... 11
6. Section 1983 — Burden of Proof .......... 12

7. Section 1983 Claim — Deprivation of Adequate Medical and Mental-Health Care ....... 12
8. Section 1983 — Fourteenth Amendment Loss of Familial Association (Companionship and Society) ........ 13
9. What Is Evidence ........ 14
10. What Is Not Evidence ........ 15
11. Direct and Circumstantial Evidence ........ 16
12. Ruling on Objections ........ 17
13. Credibility of Witnesses ........ 18
14. Impeachment — Prior Inconsistent Statements ........ 20
15. Evidence in Electronic Format ........ 21
16. Stipulations of Fact / Stipulated Testimony ........ 22
17. Judicial Notice ........ 23
18. Charts and Summaries ........ 24
19. Evidence Admitted for a Limited Purpose ........ 25
20. Deposition in Lieu of Live Testimony ........ 26
21. Expert Opinion ........ 27
22. Conduct of the Jury ........ 28
23. Communication with the Court ........ 29
24. Bench Conferences and Recess ........ 30
25. Compensatory Damages ........ 31
26. Verdict Form ........ 33
27. Punitive Damages [Phase I] ........ 34
28. Punitive Damages [Phase II] ........ 35

**Disputed Instructions (Chart 2)**

29. Responsible Health Authority (RHA) ........ 36
30. Monell — Custom or Longstanding Practice ........ 42
31. Causation (Moving Force) ........ 53
32. Discovery (RPD) Responses ........ 59
33. Party Admissions — Statements of CFMG ........ 65

## CHART 1 — JOINT INSTRUCTIONS

| No. | Instruction | 9th Cir. Model No. |
|---|---|---|
| 1 | Duty of Jury (End of Case) | 1.4 |
| 2 | Duty to Deliberate | 3.1 |
| 3 | Claims and Defenses | 1.5 |
| 4 | Corporate Party | 4.1 |
| 5 | Section 1983 Claim — Introductory Instruction | 9.1 |
| 6 | Section 1983 — Burden of Proof | 1.6 |
| 7 | Section 1983 Claim — Deprivation of Adequate Medical and Mental-Health Care | 9.34 |
| 8 | Section 1983 — Fourteenth Amendment Loss of Familial Association (Companionship and Society) | 9.36 |
| 9 | What Is Evidence | 1.9 |
| 10 | What Is Not Evidence | 1.10 |
| 11 | Direct and Circumstantial Evidence | 1.12 |
| 12 | Ruling on Objections | 1.13 |
| 13 | Credibility of Witnesses | 1.14 |
| 14 | Impeachment — Prior Inconsistent Statements | 2.10 |
| 15 | Evidence in Electronic Format | 2.17 |
| 16 | Stipulations of Fact / Stipulated Testimony | 2.3 / 2.2 |
| 17 | Judicial Notice | 2.4 |
| 18 | Charts and Summaries | 2.15 / 2.16 |
| 19 | Evidence Admitted for a Limited Purpose | 1.11 |
| 20 | Deposition in Lieu of Live Testimony | 2.5 |
| 21 | Expert Opinion | 2.14 |
| 22 | Conduct of the Jury | 1.15 |
| 23 | Communication with the Court | 3.3 |
| 24 | Bench Conferences and Recess | 1.20 |

| | | |
|---|---|---|
| 25 | Compensatory Damages | 5.1 / 5.2 |
| 26 | Verdict Form | 3.5 |
| 27 | Punitive Damages [Phase I] | 5.5 |
| 28 | Punitive Damages [Phase II] | 5.5 |

## CHART 2 — DISPUTED INSTRUCTIONS

*Instruction numbers left open for the Court. Plaintiffs' and Defendant's competing versions are listed under each topic with each side's authority.*

| No. | Disputed Instruction — Plaintiffs' and Defendant's Versions | Authority |
|---|---|---|
| ___ | **Responsible Health Authority (RHA)** | |
| | Plaintiffs — "Responsible Health Authority" (CFMG is the contracted health authority; supplies the contractual context for Model 9.5's under-color, policy, and moving-force elements) | West v. Atkins, 487 U.S. 42, 54–57 (1988); Ninth Cir. Model 9.5 (context). |
| | Defendant CFMG — No counterpart proposed; CFMG objects. | — |
| ___ | **Monell — Custom or Longstanding Practice** | |
| | Plaintiffs — "Monell Liability: Custom or Longstanding Practice" (Model 9.5, modified to define custom and the four custom theories) | Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–94 (1978); City of Canton v. Harris, 489 U.S. 378 (1989); Ninth Cir. Model 9.5. |
| | Defendant CFMG — "Monell Liability Against CFMG" | Monell, 436 U.S. at 690–94; City of Canton, 489 U.S. 378, 388–92 (1989); Connick v. Thompson, 563 U.S. 51, 61 (2011); Tsao v. Desert Palace, 698 F.3d 1128, 1139 (9th Cir. 2012). |
| ___ | **Causation** | |

| | | |
|---|---|---|
| | Plaintiffs — "Causation" (the moving force = cause-in-fact + proximate cause; concurrent causes; entity-specific) | Ninth Cir. Model 9.2 (Causation) & cmt.; Monell, 436 U.S. at 694; Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1096 (9th Cir. 2013); Tsao, 698 F.3d at 1139; Jones v. Williams, 297 F.3d 930, 937 n.6 (9th Cir. 2002); Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). |
| | Defendant CFMG — "Causation" (CFMG's proposed instruction, modified) | Authority disputed. |
| ___ | **Discovery (RPD) Responses** | |
| | Plaintiffs — "Certified Responses to Requests for Production" (weighty party admissions; CFMG may not contradict a "no responsive documents exist" response with a document it did not produce) | Fed. R. Evid. 801(d)(2); Fed. R. Civ. P. 37(c)(1); Snapp v. United Transp. Union, 889 F.3d 1088, 1103–04 (9th Cir. 2018); Am. Title Ins. v. Lacelaw Corp., 861 F.2d 224, 226–27 (9th Cir. 1988); Ninth Cir. Model 2.12 (by analogy). |
| | Defendant CFMG — "Discovery Responses" | Fed. R. Evid. 801(d)(2), 106 (modified). |
| ___ | **Party Admissions — Statements of CFMG** | |
| | Plaintiffs — "Party Admissions — Statements of CFMG" (Hewett's Rule 30(b)(6) testimony and certified responses are the company's own weighty admissions; not contradictable without an adequate explanation; not conclusive) | Fed. R. Civ. P. 30(b)(6); Fed. R. Evid. 801(d)(2)(A), (C)–(D); Snapp, 889 F.3d at 1103–04; MKB Constructors v. Am. Zurich Ins., 49 F. Supp. 3d 814, 829 n.11 (W.D. Wash. 2014); Lacelaw, 861 F.2d at 226–27. |
| | Defendant CFMG — No separate party-admissions instruction; addressed within CFMG's "Discovery Responses" instruction. | Fed. R. Evid. 801(d)(2), 106. |

*Model-instruction citations are to the Ninth Circuit Manual of Model Civil Jury Instructions (2017 ed., as revised through 2025).*

INSTRUCTION NO. 1

**DUTY OF JURY (END OF CASE)**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts, you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

INSTRUCTION NO. 2

**DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

INSTRUCTION NO. 3

**CLAIMS AND DEFENSES**

I will give you a brief summary of the positions of the parties:

This case arises from the death of Tamario Smith, a 21-year-old man who died on May 10, 2020, while he was detained at the Santa Cruz County Main Jail. The Plaintiffs are Tamario Smith and his parents and co-successors-in-interest, Felicia Smith and Michael Warren-Smith. They have sued California Forensic Medical Group, Inc. ("CFMG"), the correctional healthcare company that Santa Cruz County hired to provide medical care at the jail.

Plaintiffs bring two claims against CFMG: 1) they claim that CFMG violated Tamario Smith's constitutional rights under the Fourteenth Amendment to the U.S. Constitution by depriving him of adequate health care while he was detained at the jail, leading to his death. Plaintiffs also claim Defendant CFMG deprived Tamario Smith's parents, Felicia Smith and Michael Warren Smith, of their Fourteenth Amendment right to companionship and society. Plaintiffs claim they are entitled to monetary damages against CFMG for the harms suffered. Plaintiffs have the burden of proving this claim by a preponderance of the evidence.

CFMG denies that it violated Tamario Smith's and his parent's constitutional rights. CFMG contends that nothing it did, or failed to do, caused Tamario Smith or his parents any harm.

Your job will be to decide whether CFMG should be legally responsible for the harms suffered by Tamario Smith and his parents, and if so, how much money CFMG should be required to pay for those losses.

INSTRUCTION NO. 4

**CORPORATE PARTY**

All parties are equal before the law. The defendant in this case, CFMG is entitled to the same fair and conscientious consideration that you would give to any individual party.

INSTRUCTION NO. 5

**SECTION 1983 CLAIM—INTRODUCTORY INSTRUCTION**

Plaintiffs Felicia Smith and Michael Warren-Smith, both as individuals and as co-successors-in-interest to Tamario Smith, bring claims against CFMG under a federal statute, 42 U.S.C. § 1983, which provides that any person or persons who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

INSTRUCTION NO. 6

**SECTION 1983—BURDEN OF PROOF**

When a party has the burden of proving a claim or an affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presented it.

INSTRUCTION NO. 7

**SECTION 1983 CLAIM—DEPRIVATION OF ADEQUATE HEALTH CARE [9th Cir. 9.34]**

Plaintiffs sue CFMG under the Fourteenth Amendment to the U.S. Constitution. Plaintiffs assert that CFMG failed to provide adequate health care to Tamario Smith. To succeed on this claim, Plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

1. First, CFMG made an intentional decision regarding the denial of needed medical care;
2. Second, the denial of needed medical care put Tamario Smith at substantial risk of serious harm;
3. Third, the Defendant CFMG did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable health care provider under the circumstances would have understood the high degree of risk involved; making the consequences of the Defendant CFMG's conduct obvious; and
4. Fourth, by not taking such measures the Defendant CFMG caused Tamario Smith's injuries.
5. With respect to the third element, the Defendant CFMG's conduct must be objectively unreasonable.

INSTRUCTION NO. 8

**SECTION 1983 — FOURTEENTH AMENDMENT LOSS OF COMPANIONSHIP AND SOCIETY [ 9th Cir. Model Instruction Comment 9.36]**

Plaintiffs Felicia Smith and Michael Warren-Smith bring their own claim under the Fourteenth Amendment for the loss of their relationship with their son, Tamario Smith. A parent has a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of his or her child. This is the parents' own claim; they do not bring it on behalf of Tamario Smith. A person acting under color of state law whose deliberate indifference causes the death of a child may be liable to the parents for the deprivation of that relationship.

To succeed on this claim, Plaintiffs Felicia Smith and Michael Warren-Smith have the burden of proving each of the following elements by a preponderance of the evidence:

1. Felicia Smith and Michael Warren-Smith each had a relationship with Tamario Smith reflecting the companionship and society of parent and child;
2. CFMG, acted with deliberate indifference to Tamario Smith's serious medical needs; and
3. CFMG's conduct caused the death of Tamario Smith, thereby depriving Felicia Smith and Michael Warren-Smith of their relationship with their son.

INSTRUCTION NO. 9

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;
2. the exhibits that were admitted into evidence;
3. any facts to which the lawyers have agreed; and
4. any facts that I instructed you to accept as proved.

INSTRUCTION NO. 10

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they said in their opening statements or in closing arguments and at other times was intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that was excluded or stricken, or that you were instructed to disregard, is not evidence and must not be considered.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

INSTRUCTION NO. 11

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

INSTRUCTION NO. 12

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. During the trial, when a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer was entitled to object. If I overruled the objection, the question could be answered or the exhibit received. If I sustained the objection, the question could not be answered, and the exhibit could not be received. Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may have ordered that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

INSTRUCTION NO. 13

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

INSTRUCTION NO. 14

**IMPEACHMENT — PRIOR INCONSISTENT STATEMENTS**

In deciding how much weight to give to a witness's testimony, you may consider whether the witness made an earlier statement that is inconsistent with his or her testimony at trial. You may consider such a prior inconsistent statement, along with all the other evidence, in deciding whether to believe the witness and how much weight to give the witness's testimony. Where the earlier inconsistent statement was made under oath — such as in a deposition — you may also consider it as evidence of the truth of the matters stated in that earlier statement.

INSTRUCTION NO. 15

**EVIDENCE IN ELECTRONIC FORMAT**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer, and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the Courtroom Deputy. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the Courtroom Deputy present for the sole purpose of assuring that the only matter discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence. You may not use the computer for any other purpose, and the computer does not permit access to the Internet or any outside materials. Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

INSTRUCTION NO. 16

**STIPULATIONS OF FACT [2.3]/ STIPULATION AS TO THE TESTIMONY OF WITNESSES**

The parties have agreed to certain facts [to be placed in evidence as Exhibit __ ] [that will be read to you]. You must therefore treat these facts as having been proved. You should accept these facts as true and need not deliberate about them.

The parties have also agreed what [*witness*]'s testimony would be if called as a witness. You should consider that testimony in the same way as if it had been given here in court.

PLACE HOLDER

INSTRUCTION NO. 17

**JUDICIAL NOTICE**

The court has taken judicial notice of certain facts concerning the court records and proceedings in *Hernandez v. County of Monterey*, No. 5:13-cv-02354 (N.D. Cal.) and People of the State of California v. Tamario Smith, 19CR07460— specifically, that the orders and proceedings reflected in those records were in fact entered and occurred. You must accept these facts as proved. The limited purpose for which you may consider this evidence is explained in a separate instruction.

PLACE HOLDER

INSTRUCTION NO. 18

**CHARTS AND SUMMARIES**

During the trial you were shown charts, timelines, and summaries that were prepared to help explain or organize information drawn from other evidence, such as documents, records, and testimony. Some of these may have been admitted into evidence; others were used only as aids to assist you. In all events, a chart or summary is only as reliable as the underlying evidence it represents. You should give each chart or summary only the weight you believe the underlying evidence deserves, and if any chart or summary differs from the underlying evidence, the underlying evidence governs.

INSTRUCTION NO. 19

**EVIDENCE ADMITTED FOR A LIMITED PURPOSE**

Certain evidence concerning the litigation in *Hernandez v. County of Monterey*, No. 5:13-cv-02354 (N.D. Cal.), and People of the State of California v. Tamario Smith, 19CR07460 including the court's orders and the proceedings in that case, was admitted for a limited purpose only. You may consider that evidence solely on the questions whether CFMG had notice or knowledge of risks or deficiencies to Tamario Smith or in the health care it provided in correctional facilities, and whether CFMG had a longstanding policy, custom, or practice. You may not consider it for any other purpose. You may not treat any finding, order, or ruling in the *Hernandez* case as proof that CFMG deprived Tamario Smith of his rights in this case.

PLACE HOLDER

INSTRUCTION NO. 20

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial or is a party witness, the deposition of that person may be used at the trial.

The deposition of [witness name] was taken on [date]. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

INSTRUCTION NO. 21

**EXPERT OPINION**

You have heard testimony from witnesses who testified to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

INSTRUCTION NO. 22

**CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.

Except for discussing the case with your fellow jurors during your deliberations, do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes communicating in person, in writing, by phone, tablet, or computer, by email or text message, or through any internet chat room, blog, website, or application, including social media. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or try to learn about the case on your own. Do not visit or view any place discussed in this case. These rules protect each party's right to have this case decided only on evidence presented in court. If you are exposed to any outside information, notify the court immediately.

INSTRUCTION NO. 23

**COMMUNICATION WITH THE COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

INSTRUCTION NO. 24

**BENCH CONFERENCES AND RECESS**

From time to time during the trial, it was necessary for me to talk with the attorneys out of the hearing of the jury by calling a recess. Please understand that while you were waiting, we were working. The purpose of these conferences was not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

INSTRUCTION NO. 25

**COMPENSATORY DAMAGES**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered. If you find for Plaintiffs, then you must decide the amount of money that will reasonably and fairly compensate for the harm caused by CFMG. Plaintiffs have the burden of proving damages by a preponderance of the evidence.

Plaintiffs seek two categories of compensatory damages.

**A. Damages for Tamario Smith.**

As the co-successors-in-interest to Tamario Smith, Plaintiffs may recover the damages Tamario Smith himself sustained as a result of CFMG's conduct. In determining these damages, you should consider:

- the nature and extent of the injuries Tamario Smith suffered;
- the physical pain, mental suffering, and emotional distress Tamario Smith experienced as a result of the denial of adequate care during his incarceration and decline, up to the time of his death; and
- the loss of his life, loss of enjoyment of life and the value of the constitutional rights of which he was deprived.

**B. Damages for Felicia Smith and Michael Warren-Smith.**

Felicia Smith and Michael Warren-Smith may also recover for the loss they have suffered because of their son's death. In determining these damages, you should consider the loss of Tamario Smith's love, companionship, comfort, care, assistance, protection, affection, society, and moral support. You should also consider Felicia Smith and Michael Warren-Smith's own emotional pain and suffering as the result of any constitutional deprivation of Tamario Smith.

It is your job to decide what damages, if any, have been proved. Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.

**AUTHORITY**

*Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1103–05 (9th Cir. 2014) (§ 1983 survival; pre-death pain and suffering recoverable); *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998) (parents' Fourteenth Amendment loss of the parent-child relationship); Ninth Circuit Model Civ. Jury Instr. 5.1–5.3.

INSTRUCTION NO. 26

**VERDICT FORM**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.

INSTRUCTION NO. 27

**PUNITIVE DAMAGES [PHASE I]**

If your verdict is for Plaintiffs on the Section 1983 claim against CFMG, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate the Plaintiffs.

Plaintiffs have the burden of proving by a preponderance of the evidence that punitive damages should be awarded and, if so, the amount of any such damages.

You may award punitive damages against CFMG only if you find that CFMG's conduct that harmed Tamario Smith was also in reckless disregard of his rights. Conduct is in reckless disregard of a person's rights if, under the circumstances, it reflects a complete indifference to the person's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate a person's rights under federal law.

If you find that punitive damages are appropriate, so indicate on your verdict form and you will be given further instructions in the punitive damages phase of this trial.

INSTRUCTION NO. 28

**PUNITIVE DAMAGES [(9th Cir. Model 5.5] [PHASE II]**

You must use reason in setting punitive damages. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of CFMG's conduct, including whether the conduct that harmed Tamario Smith was particularly reprehensible because it also posed a substantial risk of harm to people who are not parties to this case. In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on Tamario Smith. You may not, however, set the amount of any punitive damages to punish CFMG for harm to anyone other than Tamario Smith

# DISPUTED JURY INSTRUCTIONS

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 29

## CFMG'S STATUS AND DUTIES AS THE RESPONSIBLE HEALTH AUTHORITY

In evaluating whether CFMG acted under color of state law and whether CFMG's policy, practice, or custom caused the deprivation of Plaintiffs' rights, you should consider the following.

Defendant CFMG provided health care to persons in custody at the Santa Cruz County jail facilities pursuant to a written contract with the County of Santa Cruz.

Under that contract, CFMG was the designated health authority responsible for health care services in the Santa Cruz County facilities, and final medical judgments rested with CFMG's Medical Director or designee. The contract is the expressly adopted policy that defined CFMG's responsibilities for health care services in those facilities.

As the designated health authority under that contract, CFMG was responsible for, among other things:

(1) coordinating mental-health assessments and care with County Mental Health;

(2) obtaining previous medical and psychiatric records from the County and other outside providers to ensure continuity of care;

(3) developing individualized, physician-approved written treatment plans for inmates with chronic conditions, including mental-health conditions and schizophrenia;

(4) conducting daily rounds for all inmates in segregation and evaluating inmates in isolation cells a minimum of three times per week to assess their physical and mental status;

(5) identifying potential drug interactions for all ordered medications; and

(6) conducting mortality reviews of in-custody deaths to determine whether earlier diagnosis or intervention might have prevented the death.

In determining whether CFMG had a "practice or custom," you may consider whether CFMG's longstanding, widespread, or well-settled standard operating procedures departed from the responsibilities it had agreed to perform as the responsible health authority. In doing so, you must carefully consider that CFMG's contractual responsibility for the health care of persons in custody was its own duty, which it could not discharge simply by delegating it to others. Other entities may have had their own separate responsibilities, but that does not relieve CFMG of the medical-care functions it agreed to perform as the designated health authority.

Evidence of conduct by the County, the Sheriff's Office, or County Mental Health may be considered for purposes such as evaluating what CFMG knew or should have known, whether CFMG had a policy, practice, or custom that was a moving force behind the deprivation of Tamario Smith's rights, the foreseeability of the harm, and the separate responsibilities of those entities. You should keep in mind, however, that CFMG's liability depends on CFMG's own policies, customs, or practices; the existence of separate responsibilities or conduct by a non-party does not, by itself, relieve CFMG of liability for its own conduct if you find that a CFMG custom was a moving force.

**AUTHORITY**

*West v. Atkins*, 487 U.S. 42, 54–57 (1988) (private entity under contract to provide medical care to persons in custody acts under color of state law); *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138–39 (9th Cir. 2012); Ninth Circuit Model Civ. Jury Instr. 9.5 & Comment; Independent Contractor Agreement (Scope of Work — "Responsibility for Health Care Services").

**PLAINTIFFS' STATEMENT IN SUPPORT**

This instruction supplements, and is to be read with, the Monell instruction (Instruction No. 30). It

supplies the contractual context the jury needs to apply Model 9.5's under-color, policy, and moving-force elements. The contract is the expressly adopted policy that defines CFMG's non-delegable duties as the designated health authority; the instruction states settled law (*West*, *Tsao*) and neutral contract terms, and it does not direct any factual finding. Because the parties dispute the scope of CFMG's responsibility relative to non-parties, the instruction is necessary to prevent the jury from improperly attributing CFMG's contractual duties to the County or other settled or dismissed actors. The instruction does not equate a breach of contract with a constitutional violation; it identifies the contract as the formally adopted arrangement establishing that CFMG acted under color of state law and held the medical-care function—matters the jury must understand to apply Model 9.5's under-color and policy elements. *West v. Atkins*, 487 U.S. 42, 54–57 (1988); *Tsao*, 698 F.3d at 1138–39. A private entity that contracts to provide medical care to detainees assumes a non-delegable duty and cannot escape liability by pointing to another entity's parallel obligations; this is entity liability for CFMG's own policy, not vicarious liability. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985); *West*, 487 U.S. at 56. The instruction is symmetrical: it permits the jury to weigh the County's and other actors' control over custody, housing, classification, and safety functions, and bars only the misattribution of CFMG's own medical responsibilities to those nonparties. It therefore resolves no disputed fact about the scope of CFMG's duties; it states the governing legal framework the jury applies to the disputed evidence.

**DEFENDANT'S OBJECTIONS:**

CFMG objects to Plaintiffs' Proposed Instruction No. 29, "CFMG's Status and Duties as the Responsible Health Authority."

The proposed instruction should not be given because it is argumentative, fact-disputed, misleading, and duplicative of the Court's standard § 1983, color-of-law, deliberate-indifference, and Monell instructions. The instruction does not merely state the law; it adopts Plaintiffs' disputed

interpretation of the contract and tells the jury what CFMG's duties were, how the contract should be characterized, and how nonparty conduct should be used against CFMG.

First, the proposed instruction improperly converts alleged contractual duties, policies, procedures, and correctional-health standards into constitutional duties. Evidence of a contract, policy, procedure, MOU, NCCHC standard, or Title 15 provision may be relevant for limited purposes such as notice, knowledge, context, or standard-of-care evidence, but such evidence does not define the Fourteenth Amendment standard and does not itself establish deliberate indifference, Monell liability, or causation. A breach of contract or violation of policy is not, by itself, a constitutional violation.

Second, the proposed instruction invades the jury's role by resolving disputed factual issues. CFMG disputes Plaintiffs' characterization of the scope of its contractual responsibilities, including whether the listed duties applied to Mr. Smith, whether they were triggered, whether CFMG received required notice from custody, whether County Behavioral Health and Dr. Lazar retained responsibility for psychiatric treatment and medication management, and whether any alleged policy or contract noncompliance caused any constitutional injury. Plaintiffs may argue their interpretation of the evidence, but they are not entitled to have the Court instruct the jury to accept it.

Third, the proposed instruction is legally improper because it states that the jury "may not find that CFMG's responsibilities as the designated health authority were limited, shared, or delegated to the County of Santa Cruz, the Santa Cruz County Sheriff's Office, Santa Cruz County Mental Health, or any other entity not a party to this case." That language is incorrect and highly prejudicial. The evidence will show that CFMG did not operate the jail, did not control custody housing or classification, did not control safety checks, did not control cell intercoms or cleaning supplies, and did not hold the contract to provide County mental-health services. County Behavioral Health and Dr. Lazar were responsible for

Mr. Smith's mental-health treatment, psychiatric medication management, psychiatric follow-up, and mental-health care planning. Plaintiffs may not use the phrase "Responsible Health Authority" to impose on CFMG liability for the entire jail, mental-health, and custody system.

Fourth, the instruction improperly collapses the Monell analysis. Monell liability requires Plaintiffs to prove that CFMG's own policy, custom, practice, failure to train, failure to supervise, or ratification was the moving force behind a constitutional violation. It does not permit liability based on a generalized "nondelegable duty" theory, vicarious liability, or the conduct of nonparties. Plaintiffs must prove an affirmative link between a CFMG policy or custom and the alleged constitutional deprivation. The proposed instruction risks creating de facto respondeat superior liability and relieves Plaintiffs of their burden to prove entity-specific Monell causation.

Fifth, the proposed instruction is one-sided regarding nonparty conduct. It allows Plaintiffs to use conduct by the County, Sheriff's Office, County Mental Health, or other nonparties offensively to prove notice, foreseeability, policy/custom, and moving force, while telling the jury it may not consider nonparty conduct to evaluate CFMG's lack of control, lack of responsibility, absence of causation, absence of deliberate indifference, or Plaintiffs' failure of proof. If nonparty conduct is admitted, any limiting instruction must be neutral and symmetrical.

Sixth, the proposed instruction is unnecessary. The jury will already be instructed on action under color of state law, objective deliberate indifference, Monell policy/custom/failure to train, moving-force causation, burden of proof, and any proper limiting instruction regarding evidence admitted for a limited purpose. A special instruction reciting Plaintiffs' preferred contract theory would confuse rather than assist the jury.

For these reasons, CFMG requests that Plaintiffs' Proposed Instruction No. 29 be refused.

**DEFENDANT'S PROPOSED INSTRUCTION NO. 30 — MONELL (1983)**

**Ninth Circuit Model Civil Jury Instruction:** 9.5, modified

**Supporting Authority:** Monell v. Department of Social Services, 436 U.S. 658, 690–94 (1978); City of Canton v. Harris, 489 U.S. 378, 388–92 (1989); Connick v. Thompson, 563 U.S. 51, 61 (2011); Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1139 (9th Cir. 2012)

CFMG may not be held liable under Section 1983 merely because it employed someone who may have acted improperly. There is no respondeat superior liability under Section 1983.

To prove liability against CFMG, Plaintiffs must prove by a preponderance of the evidence that a CFMG policy, custom, practice, failure to train, or failure to supervise, maintained with deliberate indifference, was the moving force behind the deprivation of Tamario Smith's Fourteenth Amendment right to constitutionally adequate medical care.

A policy, practice, or custom means a permanent, widespread, or well-settled practice that constitutes a standard operating procedure of CFMG.

Deliberate indifference means that CFMG consciously disregarded a known or obvious consequence of its policy, custom, practice, failure to train, or failure to supervise.

**PLAINTIFFS' OBJECTIONS:**

Incomplete statement of law and theory. As set forth below, failing to instruct on Plaintiff's specific Monell theories is reversible error. CFMG's bare-model instruction omits the recognized definition of a custom or longstanding practice and the established methods of proving one, and wrongly implies that a single individually-liable employee is required. Giving only the bare model definition while refusing instruction on the methods of proof is "an incomplete, and therefore incorrect, statement of the law." *Hunter v. County of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011). A party whose theory has support in law and in the evidence is entitled to an instruction on it, and refusal is reversible

error. *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009); *Dang v. Cross*, 422 F.3d 800, 804–05 (9th Cir. 2005). An entity custom of inadequate response can be the moving force even where no individual employee is personally liable. *Gibson v. County of Washoe*, 290 F.3d 1175, 1194–96 (9th Cir. 2002); *Fairley v. Luman*, 281 F.3d 913, 916–17 (9th Cir. 2002).

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 30 — MONELL (1983)

## CUSTOM OR LONGSTANDING PRACTICE

**Ninth Circuit Model Civil Jury Instruction:** 9.5, modified

To establish liability against CFMG, Plaintiffs must prove: (1) Tamario Smith was deprived of a constitutional right (the right to adequate health care); (2) CFMG had a policy, custom, or longstanding practice; (3) the policy, custom, or practice amounted to deliberate indifference to his constitutional right (deliberate indifference here has the same objective meaning as in Instruction No. 7—CFMG's maintenance of the practice must be objectively unreasonable in light of an obvious risk, and Plaintiffs need not prove that CFMG subjectively intended harm); and (4) it was the moving force behind the violation. CFMG acted under color of state law, as explained in Instruction No. 7. The Parties have already agreed that CFMG acted under the color of State law as the medical contracting agency in a county correctional facility. You do not need to decide this issue.

A "policy" need not be written. A private entity acting under color of state law may also be held liable for a "custom" or "longstanding practice." A custom or longstanding practice is a way of operating that is so widespread, persistent, and well-settled that it has become the entity's standard way of doing business—even if it is unwritten, even if it was never formally adopted, and even if it departs from the entity's own written policies. Such a practice is established by showing that operating in this way had become CFMG's standard or customary method of carrying out its responsibilities; its existence does not depend on proof that the practice had already caused an earlier injury or death, where the risk the practice creates is obvious.

Plaintiffs contend that CFMG maintained customs or longstanding practices in four areas:

(1) a failure to provide adequate medical care to Tamario Smith—the repeated, collective inaction of its staff in the face of his needs;

(2) a failure to monitor vulnerable, high-risk inmates, including Tamario Smith;

(3) a failure to maintain systems to communicate and share medical and mental-health information; or

(4) a failure to train and supervise its staff to use the safeguards CFMG had adopted.

You may find that CFMG maintained one or more of these customs or practices. You need not find all four.

You may find a custom or longstanding practice from all of the evidence. In deciding whether one existed, you may consider, among other things:

(a) a direct admission by the entity, or its representatives, that it operated in a certain way as a standard operating procedure or longstanding practice;

(b) repeated acts or omissions of the same kind, carried out by different staff members over time;

(c) the collective inaction of CFMG's staff in the face of Tamario Smith's repeated and serious health needs—the combined acts and omissions of multiple staff members—which you may consider in deciding whether CFMG's standard or customary way of operating was to leave such needs unmet;

(d) practices the entity consciously designed, or that its staff routinely followed, even if no written policy required them;

(e) a failure to act in the face of notice—actual or constructive—that the entity's way of operating was likely to result in constitutional violations;

(f) the entity's adoption of policies, standards, or contract requirements designed to prevent the very kind of harm that occurred, which you may consider as evidence that the entity was aware of the risk;

(g) a routine or systematic failure to follow the very policies, standards, or procedures CFMG adopted to prevent the kind of serious harm at issue, so that the gap between CFMG's written safeguards and its actual practice had itself become CFMG's customary way of operating; and

(h) a failure to investigate, review, audit, or correct repeated failures of the same kind, which you may consider as evidence that the practice was accepted and had become the entity's customary way of operating.

You need not find that the entity was aware of a risk to Tamario Smith specifically. It is sufficient that the entity was aware of a risk to inmates in his circumstances generally. Plaintiffs need not prove that CFMG's practice caused any prior injury or death; it is enough that CFMG had actual or constructive notice that the practice was substantially certain to result in the deprivation of constitutional rights. Where the risk created by a practice is obvious, that obviousness may itself establish that CFMG knew or should have known of the danger.

You may find that CFMG maintained an unconstitutional custom or longstanding practice, and is liable for it, even if you do not find that any individual employee is personally liable. It is enough that the combined acts and omissions of CFMG's staff were the moving force in the deprivation of Tamario Smith's constitutional rights.

Whether a custom or longstanding practice existed, and whether it was the moving force behind a violation of Tamario Smith's constitutional rights, are questions for you to decide from all of the evidence.

**AUTHORITY**

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978); *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) (elements). *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (private entity under color of law).

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (custom definition).

*Sandoval v. County of San Diego*, 985 F.3d 657, 681–84 (9th Cir. 2021) (Monell custom established by a systemic practice, without proof of a prior injury or a second victim); *Menotti v. City of Seattle*, 409 F.3d 1113, 1147–49 (9th Cir. 2005) (official policy and its enforcement).

*Sandoval v. County of San Diego*, 985 F.3d 657, 681–83 (9th Cir. 2021) (inaction with notice; verbal-only/no-formalized process).

*Castro v. County of Los Angeles*, 833 F.3d 1060, 1075–77 (9th Cir. 2016) (en banc) (consciously designed/routine practices; safeguards prove knowledge).

*Hunter v. County of Sacramento*, 652 F.3d 1225, 1228–29, 1232–36 (9th Cir. 2011) (*Nadell*, 268 F.3d 924; *Gillette*, 979 F.2d 1342) (routine failure to follow policy and failure to investigate as custom; methods of proof; error to refuse).

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002) (risk to inmates generally).

*Fairley v. Luman*, 281 F.3d 913, 916–17 & n.4 (9th Cir. 2002); *Richards v. County of San Bernardino*, 39 F.4th 562, 574 (9th Cir. 2022); *Horton v. City of Santa Maria*, 915 F.3d 592, 604 (9th Cir. 2019) (collective inaction; no individually liable employee required).

**PLAINTIFFS' STATEMENT IN SUPPORT**

This instruction modifies Ninth Circuit Model Civil Jury Instruction 9.5 to define "custom or longstanding practice," identify Plaintiffs' four contended customs, and state the recognized methods of

proving a custom. The additions state settled Supreme Court and Ninth Circuit law and resolve two issues the defense will raise—that a pattern requires harm to other inmates, and that the entity must have known of a risk to this plaintiff specifically. *Sandoval* forecloses the first; *Farmer* and *Gibson* foreclose the second. Under *Hunter v. County of Sacramento*, 652 F.3d 1225, **it is reversible error to instruct only on the bare model definition while refusing instructions on the recognized methods of proof; the model standing alone is "an incomplete, and therefore incorrect, statement of the law**." The additions are neutral statements of law and contention and are necessary for the jury to apply Model 9.5 correctly to this record. Identifying the contended customs and the recognized methods of proving them states the issues the jury must decide and the law it must apply—not a conclusion—and a party is entitled to such a theory-of-the-case instruction. *Hunter*, 652 F.3d at 1233; *Clem*, 566 F.3d at 1181. A custom may be proved by the systemic practice itself, and Plaintiffs need not prove a prior injury or a second victim. *Sandoval v. County of San Diego*, 985 F.3d 657, 681–84 (9th Cir. 2021). Repeated acts and omissions of the same kind in CFMG's care of Mr. Smith are evidence that the practice was CFMG's standard way of operating. *Henry v. County of Shasta*, 132 F.3d 512, 519–21 (9th Cir. 1997). Where the combined acts and omissions of multiple employees cause the deprivation, the entity may be liable on a custom-of-inaction theory even if no one employee is individually liable; that is entity liability for the entity's own custom, not respondeat superior, and it does not relieve Plaintiffs of proving an underlying constitutional deprivation. *Gibson*, 290 F.3d at 1194–96; *Fairley*, 281 F.3d at 916–17 & n.4. Evidence that CFMG adopted written safeguards is relevant to its knowledge of the risks those safeguards addressed; the actionable custom is the gap between the written policy and CFMG's actual practice, and a custom may exist contrary to formal policy. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1075–76 (9th Cir. 2016) (en banc). Plaintiffs need not prove CFMG foresaw Mr. Smith's death; it is enough that the custom created a substantial risk to detainees in circumstances like his. *Farmer v. Brennan*, 511 U.S. 825, 843–44 (1994); *Gibson*, 290 F.3d at 1188,

1196. The failure-to-train and failure-to-supervise contention is pleaded as one alternative custom and remains subject to the deliberate-indifference element of Model 9.5; the instruction does not lower that standard. Collective inaction is itself a recognized route to entity liability: where the combined acts and omissions of an entity's staff in the face of a person's known, serious needs cause the deprivation, the entity is liable even though no individual employee is, and even within a single confinement. *Fairley*, 281 F.3d at 916–17 & n.4; *Gibson*, 290 F.3d at 1194–96. A routine failure to follow the safeguards CFMG adopted to prevent this very harm is also a permissible basis for a custom: the gap between an entity's written policy and its actual practice can constitute the custom, while the policy's adoption is evidence the entity knew of the risk. *Castro*, 833 F.3d at 1075–77; *Gillette v. Delmore*, 979 F.2d 1342, 1348–49 (9th Cir. 1992). Nor was CFMG entitled to a "free" prior death before it could be charged with notice: where the risk is obvious, its obviousness supplies constructive knowledge even without a prior similar incident, which is precisely why the panel in *Sandoval* rejected the demand for proof of a "prior injury or death." *Sandoval*, 985 F.3d at 681–84; *City of Canton v. Harris*, 489 U.S. 378, 390 & n.10 (1989); *Castro*, 833 F.3d at 1076. *Hunter* is directly on point on the form of this instruction: the plaintiffs there submitted ten separate methods-of-proof instructions, and the Ninth Circuit held that refusing them was reversible error—adding that even if some were "argumentative" or "duplicative," that was no basis to refuse to instruct on the topic, because the remedy is to modify the instruction, not to omit it. *Hunter*, 652 F.3d at 1228–29, 1235 & n.11.

**DEFENDANT'S OBJECTIONS**:

CFMG objects to Plaintiffs' Proposed Instruction No. 30, "Custom or Longstanding Practice."

The proposed instruction should not be given because it is argumentative, overbroad, duplicative of Ninth Circuit Model Civil Jury Instruction 9.5, and materially misstates or overstates the law governing Monell liability. Plaintiffs' proposed instruction does not merely define "custom" or

"longstanding practice." It embeds Plaintiffs' theory of the case, identifies Plaintiffs' alleged customs as if they are legally cognizable and supported by the evidence, instructs the jury on Plaintiffs' preferred methods of proof, and risks allowing the jury to impose entity liability based on negligence, policy noncompliance, collective staff conduct, or nonparty conduct rather than a CFMG policy or custom that was the moving force behind a constitutional violation.

First, the proposed instruction is argumentative. It lists Plaintiffs' four alleged customs — failure to provide adequate care, failure to monitor vulnerable inmates, failure to maintain communication systems, and failure to train/supervise — and then tells the jury the many ways it "may" find those customs. That is not a neutral instruction of law. It is Plaintiffs' closing argument in the form of a jury instruction. Plaintiffs may argue their theory from the evidence, but they are not entitled to a Court instruction that highlights their factual contentions and methods of proof.

Second, the instruction improperly expands Monell liability beyond the model instruction. The Ninth Circuit model instruction already states the elements Plaintiffs must prove: a constitutional deprivation, a policy or custom, deliberate indifference, and moving-force causation. Plaintiffs' proposed additions risk diluting those elements by allowing the jury to find a "custom" based on broad categories of alleged policy noncompliance, failures to investigate, failures to audit, or failures to correct, without requiring the jury to find a permanent, widespread, and well-settled practice attributable to CFMG as an entity.

Third, the instruction risks imposing de facto respondeat superior liability. Plaintiffs' language that the jury may rely on "repeated, collective inaction of its staff," "combined acts and omissions of CFMG's staff," or "multiple constitutional violations committed by different staff members over the course of Tamario Smith's own confinement" improperly invites the jury to aggregate individual acts or

omissions and treat them as an entity custom. Monell does not permit liability merely because multiple employees allegedly acted negligently or failed to follow policy. Plaintiffs must prove that CFMG itself maintained a policy, custom, or longstanding practice that caused the constitutional deprivation.

Fourth, the instruction improperly tells the jury that it may find a custom based on "multiple constitutional violations" during Mr. Smith's own confinement and care. That language is highly prejudicial and assumes the existence of "multiple constitutional violations," which is one of the central disputed issues for the jury. It also risks allowing a single course of care involving one inmate to substitute for the required showing of a widespread, persistent, and well-settled practice. CFMG disputes that Plaintiffs can establish a Monell custom through alleged events involving only Mr. Smith's care, particularly where Plaintiffs' theory depends on hindsight, disputed policy interpretation, and conduct by nonparties.

Fifth, the instruction improperly converts CFMG's written policies, standards, and contract requirements into evidence of unconstitutional custom and knowledge. The fact that an entity adopts safeguards, policies, or procedures does not by itself establish deliberate indifference or prove that the entity knew failure to follow a policy was likely to cause a constitutional violation. Nor does a violation of a policy or contract provision itself establish deliberate indifference, Monell liability, or moving-force causation. Evidence of policies may be relevant for limited purposes, but the jury should not be instructed that adoption of safeguards proves knowledge of constitutional risk.

Sixth, the proposed instruction overstates the relevance of "risk to inmates generally." While Plaintiffs need not prove that CFMG knew Mr. Smith specifically would die, Plaintiffs still must prove that the alleged policy or custom created an obvious, substantial risk to inmates in circumstances sufficiently similar to Mr. Smith's and that the policy or custom was the moving force behind the

constitutional deprivation at issue. Plaintiffs' proposed instruction risks allowing the jury to rely on generalized institutional criticism or unrelated risks to other inmates without the required causal connection to Mr. Smith's alleged constitutional injury.

Seventh, the instruction improperly states that the jury may find CFMG liable "even if you do not find that any individual employee is personally liable" based on "combined acts and omissions of CFMG's staff." This language is misleading in this case. Even if an entity may, in some circumstances, be liable absent an individually liable employee, Plaintiffs must still prove an underlying constitutional violation and must prove that a CFMG policy or custom caused that violation. The instruction as written risks telling the jury it may bypass the underlying constitutional-violation and causation requirements by aggregating non-constitutional acts or omissions.

Eighth, the instruction improperly references "failure to train and supervise" without correctly stating the stringent standard for such a claim. A failure-to-train or failure-to-supervise theory requires proof that the need for training or supervision was so obvious, and the failure so likely to result in constitutional violations, that CFMG can be said to have been deliberately indifferent. It is not enough to show imperfect training records, missing documentation, isolated mistakes, or that additional training might have been helpful.

Ninth, the instruction is unnecessary and confusing. The jury can be adequately instructed using the Ninth Circuit model instructions on § 1983, objective deliberate indifference, Monell liability, policy/custom, and moving-force causation. Plaintiffs' proposed instruction is lengthy, selective, and likely to confuse the jury by blending legal standards, evidentiary arguments, disputed factual contentions, and Plaintiffs' theory of proof.

For these reasons, CFMG requests that Plaintiffs' Proposed Instruction No. 30 be refused.

**DEFENDANT'S PROPOSED INSTRUCTION NO. 31 — CAUSATION**

**Ninth Circuit Model Civil Jury Instruction:** 9.8 / 9.24 concepts, modified

Plaintiffs must prove that the alleged deprivation of constitutionally adequate medical care was a cause of injury to Tamario Smith.

Plaintiffs must also prove that a CFMG policy, custom, practice, failure to train, or failure to supervise, maintained with deliberate indifference, was the moving force behind the alleged deprivation of constitutionally adequate medical care.

If the injury would have occurred regardless of CFMG's conduct, then Plaintiffs have not proved causation as to CFMG. You may consider whether other causes, medical conditions, persons, entities, or circumstances contributed to or caused the outcome when deciding whether Plaintiffs have proved causation as to CFMG.

**PLAINTIFF'S OBJECTION:**

Incorrect statement of law & Argumentative. Plaintiff's assert that "moving force" analysis is unique to each defendant and that one parties being a moving does not preclude another party from contributing to the same moving force or have a totally different moving force. The word "the" in the context of the "the moving force" is not exclusive to a single actor. CFMG's proposed instruction is drawn from Models 9.8 and 9.24, which state causation for individual-capacity claims, not the moving-force causation standard for entity liability under Model 9.2 and *Monell*. It also misstates the law by treating CFMG's custom as though it must be the sole cause. A custom need only be "the moving force"—a cause in fact and a proximate cause—not the exclusive cause, and concurrent causation by others does not defeat liability. *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013); *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008); *Jones v. Williams*, 297 F.3d 930, 937 & n.6 (9th Cir. 2002).

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 31 — CAUSATION [9th Cir. Civil Jury Inst. 9.2]**

For CFMG to be liable, Plaintiffs must prove by a preponderance of the evidence that a CFMG policy, custom, or practice was a moving force that caused the deprivation of Tamario Smith's constitutional rights. This means that the policy, custom, or practice must have been so closely related to the deprivation of Tamario Smith's rights as to be a cause of his injury.

In deciding causation, your inquiry focuses on CFMG's own duties and responsibilities, and on whether its own acts or omissions—its policies, customs, and practices—were the moving force that caused the deprivation. CFMG's responsibility is measured by its own policies, customs, and practices.

A policy, custom, or practice need not be the only cause of an injury to be the moving force. Many factors, or the conduct of two or more persons or entities, may operate at the same time—either independently or together—to cause an injury, and in that situation each may be a cause. Accordingly, the fact that some other person or condition may also have contributed to the injury does not, by itself, prevent a CFMG policy, custom, or practice from being a moving force. If you find that a CFMG custom was the moving force that caused the deprivation of Tamario Smith's rights, it remains a cause even though the conduct of others, or other conditions, may also have contributed to the injury.

If, on the other hand, you find that no CFMG policy, custom, or practice was the moving force, that is, that no CFMG policy, custom, or practice was a cause of the deprivation, then Plaintiffs have not proved causation, and you must decide this question in favor of CFMG.

**AUTHORITY**

Ninth Circuit Model Civil Jury Instruction 9.2 (Causation) & cmt.; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012); *Jones v. Williams*, 297 F.3d 930, 937 & n.6 (9th Cir. 2002); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

**PLAINTIFFS' STATEMENT IN SUPPORT**

This instruction states the federal causation standard for a Monell claim and is drawn from authority the Ninth Circuit and this Model set already recognize; it is balanced, placing the burden of proof on Plaintiffs and directing a finding for CFMG if no CFMG policy, custom, or practice was the moving force. Liability is entity-specific: a private entity acting under color of state law is liable only for its own policy, custom, or practice that is the moving force behind the deprivation, and its responsibility is

measured against its own conduct. *Tsao v. Desert Palace, Inc.*, 698 F.3d at 1139; see *Monell*, 436 U.S. at 694. Consistent with that focus, "[t]he inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d at 633. The instruction also incorporates the settled rule that one injury may have more than one cause: "[M]any factors or things or the conduct of two or more persons can operate at the same time either independently or together to cause injury or damage and in such a case each may be a proximate cause." *Jones v. Williams*, 297 F.3d at 937 n.6. Taken together, these authorities establish that a CFMG custom need only be *the* moving force—not the sole force—and that the contribution of other persons or conditions does not defeat causation so long as a CFMG custom was itself the moving force. *See* Ninth Circuit Model Civil Jury Instruction 9.2 (Causation). Notably, both the individualized-causation statement from *Leer* and the concurrent-cause statement from *Jones* are set out in the Comment to Model Instruction 9.2 itself, so this instruction tracks the Ninth Circuit's own statement of § 1983 causation rather than supplementing it. If the guiding principle in the above proposed instruction were not true, and there could only be one moving force, then a County and its contractor could never both be liable because each entity could argue the other was "the" moving force when in fact they can both be liable simultaneously. For this same reason, the County being liable does not defeat CFMG also being liable. Thus, the County's correctional and mental-health liability does not diminish or excuse CFMG's separate liability for the medical care for which CFMG—not the County—was responsible; such evidence may bear on other issues, but it cannot defeat causation where a CFMG custom was itself a moving force. The instruction does not merge causation requirements: Plaintiffs separately must prove an underlying constitutional deprivation and that a CFMG custom was both a cause in fact and the proximate cause—"the moving force"—of that deprivation. *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013); *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). Recognizing concurrent causes imports no liability for the conduct of others; it forecloses only the argument that another actor's contribution excuses a CFMG custom that independently satisfied the moving-force standard. *Jones*, 297 F.3d at 937 n.6.

**DEFENDANT'S OBJECTION:**

CFMG objects to Plaintiffs' Proposed Instruction No. 31 regarding "Moving Force" causation.

The proposed instruction should not be given because it is argumentative, misleading, incomplete, and risks collapsing multiple distinct causation requirements into a single generalized "moving force" inquiry. While CFMG does not dispute that a policy or custom need not be the sole cause of an injury, Plaintiffs' proposed instruction materially overstates that principle and would allow the jury to impose Monell liability without separately finding the required underlying constitutional violation, medical causation, and direct causal link between a CFMG policy/custom and the alleged deprivation.

First, the instruction improperly blends **medical causation** and **Monell moving-force causation**. Plaintiffs must prove both: (1) that the alleged deliberate indifference to Mr. Smith's serious medical needs caused injury or death; and (2) that a CFMG policy, custom, practice, failure to train, failure to supervise, or ratification was the moving force behind that constitutional violation. A Monell "moving force" instruction cannot replace the separate requirement that Plaintiffs prove the alleged constitutional violation caused Mr. Smith's death or injury. The proposed instruction risks allowing the jury to skip that necessary first causal determination.

Second, the instruction is incomplete because it does not adequately state that Plaintiffs must prove a **direct causal link** between a CFMG policy or custom and the alleged constitutional deprivation. Monell liability requires more than showing that a CFMG policy or custom was somehow related to, associated with, or one of many background conditions preceding the harm. Plaintiffs must prove that CFMG's own policy or custom was closely connected to the deprivation and was the moving force

behind it. Generalized system criticism, nonparty conduct, poor documentation, alleged contract noncompliance, or hindsight disagreement with medical judgment is not enough.

Third, the instruction improperly emphasizes concurrent causation in a manner that invites the jury to hold CFMG liable for nonparty conduct. CFMG does not dispute that there can be more than one cause of an injury in an appropriate case. But the fact that multiple actors may contribute to an injury does not eliminate Plaintiffs' burden to prove that CFMG's own policy or custom independently satisfies Monell's moving-force requirement. Plaintiffs' proposed language would allow the jury to find causation based on the conduct of the County, the Sheriff's Office, County Behavioral Health, Dr. Lazar, custody staff, classification decisions, safety checks, or other conditions over which CFMG had no control.

Fourth, Plaintiffs' statement in support confirms the problem. Plaintiffs argue that "the County's correctional and mental health liability is irrelevant to CFMG's medical liability." That is incorrect. Evidence concerning County Behavioral Health, Dr. Lazar, custody, classification, housing, safety checks, and other nonparty conduct is relevant to the scope of CFMG's responsibilities, CFMG's lack of control over non-medical functions, causation, foreseeability, and whether Plaintiffs have met their burden of proving a CFMG policy/custom was the moving force behind the alleged injury. Plaintiffs may not use a concurrent-causation instruction to prevent CFMG from showing that nonparty conduct, rather than a CFMG policy or custom, caused or explains the alleged injury.

Fifth, the instruction is argumentative because it repeatedly emphasizes that other actors' conduct does not defeat causation, while failing to equally emphasize that Plaintiffs must prove that CFMG's own policy or custom was not merely a contributing condition, but the moving force behind a constitutional violation. The instruction thus favors Plaintiffs' theory that CFMG may be liable even if

County mental-health and custody conduct were central to the events, while minimizing CFMG's defense that Plaintiffs cannot prove entity-specific causation.

Sixth, the proposed instruction risks confusing the jury on Monell's entity-specific limitation. CFMG cannot be held liable under § 1983 based on respondeat superior, vicarious liability, or the acts of nonparties. The jury must be instructed that CFMG may be liable only if Plaintiffs prove that CFMG's own policy, custom, practice, failure to train, failure to supervise, or ratification was the moving force behind the alleged constitutional violation. Plaintiffs' proposed instruction does not sufficiently guard against liability based on aggregation of nonparty conduct or generalized jail-system failures.

Seventh, the proposed instruction is unnecessary. The Ninth Circuit model instructions on § 1983 causation and Monell liability adequately state the applicable law. If the Court believes additional language on concurrent causation is necessary, it should be neutral and should expressly preserve Plaintiffs' burden to prove both underlying constitutional/medical causation and Monell moving-force causation.

For these reasons, CFMG requests that Plaintiffs' Proposed Instruction No. 31 be refused.

**DEFENDANT'S PROPOSED INSTRUCTION NO. 32 –**

**REQUEST FOR PRODUCTION OF DOCUMENT RESPONSES**

**Ninth Circuit Model Civil Jury Instruction:** Modified; Fed. R. Evid. 801(d)(2), Fed. R. Evid. 106

You may hear evidence concerning written discovery responses. If a discovery response is admitted into evidence, you may consider it with all other evidence.

A discovery response is not automatically conclusive unless I instruct you otherwise. You should consider the wording of the request, the wording of the response, the timing and context of the response, any explanation admitted into evidence, and all other evidence bearing on the issue. You may give the discovery response whatever weight you believe it deserves.

**PLAINTIFFS' OBJECTIONS:**

Incomplete statement of law. See further basis set forth below. A party may not contradict a certified response stating that no responsive documents exist by offering, or arguing the existence of, any such document based on a document that does not, in fact, exist or that has not been produced in discovery. CFMG's proposed instruction is incomplete because it omits that a certified discovery response is a statement of a party-opponent admissible as substantive evidence under Federal Rule of Evidence 801(d)(2), which the party may explain but may not contradict with a fabricated or unproduced document. *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226–27 (9th Cir. 1988).

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 32 –**

**REQUEST FOR PRODUCTION OF DOCUMENT RESPONSES**

**Ninth Circuit Model Civil Jury Instruction:** Modified; Fed. R. Evid. 801(d)(2), Fed. R. Evid. 106

During this case, the parties took part in a formal pretrial process called discovery. As part of that process, each party could require the other to produce documents and to state in writing whether documents responsive to a request exist. CFMG served written, certified responses to Plaintiffs' requests for the production of documents.

A certified discovery response is a statement made by the party itself in this lawsuit, through its counsel, under the obligations of the discovery process. You may consider CFMG's certified responses—including any response stating that no responsive documents exist—as evidence in deciding the facts, and you may give such a statement the weight you find it deserves.

Because it is the party's own formal statement made during this case, you may consider it as evidence against the party that made it. At the same time, such a response is not a final or conclusive determination of any fact. The party that made the response may explain it or offer other evidence on the same subject, and the opposing party may do the same. You are not required to treat the response as conclusively true, and you are not required to disregard it. It is for you to decide, after weighing it together with all the other evidence, what the facts are and how much weight the response deserves. In weighing such a response, you should carefully consider that CFMG itself certified, during this case, that no responsive documents exist. A party's own certified statement that a document does not exist is evidence you may weigh, and a party may not rely on a document that has not been produced and is not in evidence to dispute its own certification.

**AUTHORITY**

Fed. R. Evid. 801(d)(2)(A), (C)–(D) (a statement offered against an opposing party that was made by the party or its authorized agent or employee is an admission of a party-opponent and is not hearsay); *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226–27 (9th Cir. 1988) (distinguishing conclusively binding judicial admissions in the pleadings from evidentiary admissions made elsewhere in the litigation, which a party "may controvert or explain"); Fed. R. Civ. P. 36(b) (by contrast, a matter admitted in response to a Request for Admission is "conclusively established"); *Snapp v. United Transp. Union*, 889 F.3d 1088, 1103–04 (9th Cir. 2018) (party's formal litigation statements are weighty evidence, not irrebuttable judicial admissions). See also Fed. R. Civ. P. 37(c)(1) (a party that fails to disclose or produce a document in discovery may not use that document at trial unless the failure was substantially justified or harmless).

**PLAINTIFFS' STATEMENT IN SUPPORT**

CFMG's certified responses to Plaintiffs' requests for production—including its certifications that no responsive documents exist—are admissions of a party-opponent admissible as substantive evidence

under Federal Rule of Evidence 801(d)(2). This instruction gives those responses their proper, even-handed effect: the jury may consider them as the party's own formal statements made during this case, but is not told to treat them as conclusively binding. That is the correct line under Ninth Circuit law, which treats factual admissions in the pleadings as conclusive judicial admissions but treats discovery responses and similar litigation statements as *evidentiary* admissions that the party may explain or controvert. *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d at 226–27. The instruction therefore neither overstates the responses as a judicial admission that withdraws the issue from the jury, nor permits CFMG to disclaim its own certified responses as if they were the testimony of a stranger; the jury weighs them with all the other evidence. Consistent with that even-handed line, the instruction also reflects Federal Rule of Civil Procedure 37(c)(1): CFMG may not contradict a certified statement that no responsive documents exist by offering, or arguing the existence of, a document that does not exist or that it never produced in discovery. The instruction is even-handed and applies to any party's certified responses; it does not treat them as conclusive but states the settled evidentiary effect of a party's own formal statements. *Lacelaw*, 861 F.2d at 226–27. The final sentence states a rule of evidence, not a discovery sanction: a party may explain the scope, wording, or possession-custody-and-control limits of its response, but it may not prove the existence of a document it certified did not exist and never produced by reference to material that is not in evidence. So limited, the instruction does not ask the jury to police discovery and does not bar CFMG from explaining its responses.

**DEFENDANT'S OBJECTIONS:**

CFMG objects to Plaintiffs' Proposed Instruction No. 32 regarding "Request for Production of Document Responses."

The proposed instruction should not be given because it is unnecessary, argumentative, confusing, and improperly combines evidentiary principles, discovery-dispute sanctions, and Plaintiffs' factual theory into a jury instruction. The instruction also risks inviting the jury to punish CFMG for

discovery issues and improperly elevates discovery responses into substantive proof beyond their permissible evidentiary use.

First, the proposed instruction is unnecessary. The Federal Rules of Evidence already govern whether any discovery response is admissible, for what purpose it may be considered, and whether any additional completeness evidence is required. If a particular discovery response is admitted at trial, counsel may argue its significance and the jury may weigh it with the rest of the evidence. There is no need for a special instruction highlighting CFMG's discovery responses.

Second, the proposed instruction is argumentative and unfairly emphasizes Plaintiffs' discovery theme. Plaintiffs seek a special instruction telling the jury that CFMG served "certified responses," that the jury may consider those responses against CFMG, and that CFMG may not contradict a statement that no responsive documents exist. This is not a neutral statement of law. It invites the jury to focus on discovery responses as a central liability fact and to draw adverse conclusions from alleged document nonexistence or nonproduction. Plaintiffs may examine witnesses and argue admitted evidence, but they are not entitled to a Court instruction endorsing their discovery narrative.

Third, the instruction improperly conflates evidentiary admissions with discovery sanctions. Federal Rule of Evidence 801(d)(2) may permit certain party statements to be admitted as non-hearsay, but that does not mean the jury should receive a special instruction about discovery responses. Rule 37(c)(1), by contrast, is a discovery-sanction rule administered by the Court, not a jury instruction. Whether a party may use a document or argument allegedly not disclosed in discovery is an issue for the Court to decide outside the jury's presence. Plaintiffs' proposed instruction improperly asks the jury to police discovery compliance.

Fourth, the final sentence is especially improper. Plaintiffs propose to instruct that "CFMG may not contradict a certified response stating that no responsive documents exist by offering, or arguing the existence of, any such document based on a document that does not, in fact, exist or that has not been produced in discovery." That language is confusing, argumentative, and potentially circular. If a document "does not, in fact, exist," there is nothing to offer. If the issue is whether CFMG may explain why a document was not located, was not responsive, was not within CFMG's possession, custody, or control, was maintained by another entity, or did not exist in the form Plaintiffs claim, that explanation should not be barred by jury instruction. If the issue is whether an unproduced document may be used at trial, that is a Rule 37 issue for the Court, not the jury.

Fifth, the instruction risks misleading the jury into treating discovery responses as quasi-conclusive admissions. Plaintiffs say the instruction is even-handed because it states the responses are not conclusive. But the instruction then singles out CFMG and tells the jury CFMG "may not contradict" certain responses. That is inconsistent with Plaintiffs' own cited authority recognizing that litigation statements outside the pleadings are evidentiary admissions that may be explained or controverted. If a discovery response is admitted, CFMG must be allowed to explain the context, scope, wording, timing, objections, later-acquired information, whether the response was limited to documents within CFMG's possession, custody, or control, and whether the request sought a document that never existed.

Sixth, the instruction is incomplete because it does not address the distinction between "no responsive documents exist," "no responsive documents were located," "no responsive documents are in CFMG's possession, custody, or control," and "documents may exist in the possession of another entity or nonparty." Those distinctions matter. Plaintiffs' proposed instruction could mislead the jury into

treating any absence of documents as proof that CFMG had no basis to present testimony or argument on the subject.

Seventh, the instruction would improperly chill CFMG's ability to present its defense. CFMG must be allowed to present witness testimony, expert testimony, policy evidence, and other admissible evidence even if Plaintiffs contend that some category of documents was not produced. A party's inability to produce a particular document does not automatically preclude testimony about practices, events, training, communications, or other facts. The remedy for an actual discovery violation is a motion under Rule 37, not a broad jury instruction.

Eighth, the instruction is likely to confuse the issues and unfairly prejudice CFMG under Federal Rule of Evidence 403. The jury's role is to decide liability, causation, and damages based on admitted evidence, not to resolve discovery disputes or speculate about missing documents. Any proper limiting or preclusion order should be addressed by the Court before the evidence is presented, not by instructing the jury that CFMG may or may not make certain arguments.

For these reasons, CFMG requests that Plaintiffs' Proposed Instruction No. 32 be refused.

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 33 –**

**PARTY ADMISSIONS — STATEMENTS OF CFMG**

A statement made by a party may be considered by you as evidence against that party. A corporation acts and speaks only through its representatives. CFMG designated Sarah Hewett as its corporate representative under Federal Rule of Civil Procedure 30(b)(6) to testify on its behalf; in that capacity, her testimony is the testimony and statement of CFMG itself. You have also received in evidence CFMG's certified written responses to Plaintiffs' discovery requests, which are the signed statements of CFMG as a party. You may consider CFMG's Rule 30(b)(6) testimony and its certified discovery responses as the company's own statements, and you may give them the weight you believe they deserve, considering them together with all the other evidence.

Because Ms. Hewett testified as CFMG's designated representative on the subjects for which she was designated, her testimony on those subjects is the company's own testimony. CFMG may explain, clarify, or add to that testimony. If other evidence offered by CFMG differs from its representative's testimony, you must carefully consider whether CFMG has offered a genuine and adequate explanation for the difference. If you find that it has not, you may give the representative's testimony the weight of the company's own account of the matters on which she testified, considered together with all the other evidence.

**AUTHORITY**

Fed. R. Civ. P. 30(b)(6) (a designated representative testifies on behalf of the organization); Fed. R. Evid. 801(d)(2)(A), (C)–(D) (a statement offered against an opposing party that was made by the party or its authorized representative or employee is an admission of a party-opponent and is not hearsay); *Snapp v. United Transp. Union*, 889 F.3d 1088, 1103–04 (9th Cir. 2018) ("a corporation generally cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative," although this principle "applies only where the purportedly conflicting evidence truly, and without good reason or explanation, is in conflict"; Rule 30(b)(6) testimony is a weighty evidentiary admission that may be "corrected, explained and supplemented," not an irrebuttable judicial admission); *MKB Constructors*

*v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814, 829 n.11 (W.D. Wash. 2014) (quoted with approval in *Snapp*) ("[A] party cannot rebut the testimony of its Rule 30(b)(6) witness when … the opposing party has relied on the Rule 30(b)(6) testimony, and there is no adequate explanation for the rebuttal."); *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226–27 (9th Cir. 1988) (a party's litigation statements are evidentiary admissions the party may explain or controvert); *see also* Ninth Circuit Model Civil Jury Instructions 2.12 (Use of Interrogatories) & 2.13 (Use of Requests for Admission).

**PLAINTIFFS' STATEMENT IN SUPPORT**

The Ninth Circuit Model Civil Jury Instructions contain no instruction on statements of a party-opponent under Federal Rule of Evidence 801(d)(2); the model set addresses only a party's interrogatory answers (Instruction 2.12) and Rule 36 requests for admission (Instruction 2.13). This instruction fills that gap for the two forms of party statement actually in evidence here: CFMG's Rule 30(b)(6) testimony and its certified written discovery responses. A Rule 30(b)(6) designee testifies for the organization, and that testimony is admissible against it as a party admission. Fed. R. Civ. P. 30(b)(6); Fed. R. Evid. 801(d)(2). Consistent with *Snapp*, the instruction states the governing limit in even-handed terms: the company may explain, clarify, or supplement its representative's testimony, but it may not contradict that testimony through unexplained conflicting evidence—particularly where, as here, Plaintiffs have relied on it. *Snapp*, 889 F.3d at 1103–04; *MKB Constructors*, 49 F. Supp. 3d at 829 n.11. The instruction does not overstate the testimony as a conclusively binding judicial admission, which would be error under *Lacelaw*, 861 F.2d at 226–27; rather, it is a weighty admission the jury weighs with all the evidence, subject to the rule that an unexplained, after-the-fact contradiction of the company's own designated testimony does not displace it. The instruction states the law correctly and even-handedly: Rule 30(b)(6) testimony is a statement of a party-opponent admissible against the entity under Rule 801(d)(2)(D), and it is not conclusive—the company may explain, clarify, or supplement it, but may not displace it through unexplained, after-the-fact contradiction. *Snapp v. United Transportation Union*, 889 F.3d 1088, 1103–04 (9th Cir. 2018). The "explain, clarify, or supplement" language preserves CFMG's ability to address the scope of the designated topics and later-acquired information; it asks the jury to weigh the evidence, not to police discovery. Because the Model set supplies no party-admission instruction—addressing only

interrogatories (2.12) and Rule 36 (2.13)—a neutral instruction phrased to apply to any party's own statements is appropriate to fill that gap.

**DEFENDANT'S OBJECTIONS:**

CFMG objects to Plaintiffs' Proposed Instruction No. 33, "Party Admissions — Statements of CFMG."

The proposed instruction should not be given because it is unnecessary, argumentative, misleading, and improperly elevates Rule 30(b)(6) testimony and discovery responses into quasi-conclusive admissions. The instruction also improperly asks the jury to decide whether CFMG has offered a "genuine and adequate explanation" for any alleged difference between a corporate representative's testimony and other evidence, which is not an appropriate jury instruction and risks confusing the issues.

First, the proposed instruction is unnecessary. The Federal Rules of Evidence already govern whether a statement by a party or its representative is admissible as non-hearsay under Rule 801(d)(2). If Rule 30(b)(6) testimony or written discovery responses are admitted into evidence, counsel may argue their significance, and the jury may weigh them with the rest of the evidence. There is no need for a special instruction that singles out CFMG's corporate representative testimony and discovery responses.

Second, the instruction is argumentative because it highlights Plaintiffs' selected evidence and tells the jury that Sarah Hewett's testimony and CFMG's discovery responses are "the company's own testimony," "the company's own statements," and potentially "the company's own account" of the matters at issue. That language improperly emphasizes Plaintiffs' preferred evidence and invites the jury to give that evidence special weight. The Court should not instruct the jury in a manner that endorses Plaintiffs' view of the evidentiary significance of one witness's testimony.

Third, the instruction misstates the effect of Rule 30(b)(6) testimony. Rule 30(b)(6) testimony is an evidentiary admission, not a judicial admission. It is not conclusive and does not bind the corporation in the same way as a formal admission under Rule 36 or a stipulation. CFMG may explain, clarify, supplement, or controvert Rule 30(b)(6) testimony through other admissible evidence, including testimony from other witnesses, documents, expert testimony, and trial evidence. Plaintiffs' instruction acknowledges this in part, but then undermines it by stating that CFMG "may not" contradict its representative's testimony unless it provides a "genuine and adequate explanation." That language is misleading and improper.

Fourth, the proposed instruction improperly asks the jury to decide whether CFMG has provided a "genuine and adequate explanation" for any alleged difference between Ms. Hewett's testimony and other evidence. Whether evidence is admissible, whether a party is improperly contradicting Rule 30(b)(6) testimony, and whether any remedy is appropriate are matters for the Court, not the jury. The jury's role is to weigh admitted evidence, not police Rule 30(b)(6) compliance or decide whether a party's explanation for different evidence is "adequate" in a discovery-law sense.

Fifth, the instruction is incomplete and potentially misleading because it does not explain the limited scope of Rule 30(b)(6) testimony. A corporate designee testifies on designated topics based on information reasonably available to the organization. The designee may lack personal knowledge, may testify based on records or information provided by others, and may testify at a particular point in discovery based on the information then available. Rule 30(b)(6) testimony does not prevent the corporation from relying on later-developed evidence, other witnesses with personal knowledge, corrections, clarifications, or evidence outside the scope of the designated topics.

Sixth, the instruction improperly conflates Rule 30(b)(6) testimony with certified written discovery responses. Different discovery devices have different legal effects. Rule 36 admissions may be conclusively established unless withdrawn or amended. Interrogatory answers, document-response certifications, and Rule 30(b)(6) testimony are not the same. Plaintiffs' instruction risks confusing the jury by grouping different types of litigation statements together and suggesting they all operate as CFMG's authoritative "account."

Seventh, the proposed instruction is unfairly one-sided. It focuses only on CFMG's statements and does not address Plaintiffs' own discovery responses, deposition testimony, expert disclosures, or other litigation statements. If a general instruction on party admissions is needed, it should apply neutrally to all parties and should not single out CFMG, Ms. Hewett, or CFMG's discovery responses.

Eighth, the instruction is likely to confuse the jury and unfairly prejudice CFMG under Federal Rule of Evidence 403. The jury should decide the facts based on all admitted evidence. A special instruction telling the jury how to treat Ms. Hewett's Rule 30(b)(6) testimony risks placing undue emphasis on one witness and improperly suggesting that other evidence is less reliable if it differs from her testimony. Plaintiffs may argue that Ms. Hewett's testimony is important; they should not receive a special instruction effectively endorsing that argument.

For these reasons, CFMG requests that Plaintiffs' Proposed Instruction No. 33 be refused.

Dated: June 15, 2026 CABALLERO & GETTLEMAN LAW OFFICE, INC.

By: _______/s/ Jonathan Gettleman_________
JONATHAN GETTLEMAN
ELIZABETH CABALLERO
Attorneys for Plaintiff

Dated: June 15, 2026

**BERTLING LAW GROUP, LLC**

*By: /s/ Peter G. Bertling*

Peter G. Bertling

Attorney for Defendant California